Eldon C. HART, Petitioner,

v.

John L. McLUCAS, Administrator, Federal Aviation Administration, and National Transportation Safety Board, Respondents.

No. 74-2896.

United States Court of Appeals, Ninth Circuit.

May 5, 1976.

G. Rich Andrus, Rexburg, Idaho (argued), Rigby, Thatcher & Andrus, Rexburg, Idaho, for petitioner.

Richard A. Lavine, Asst. Atty. Gen., App. Section, Civ. Div., Dept. of Justice, Washington, D. C. (argued), for respondents.

## OPINION

Before SMITH,* HUFSTEDLER, Circuit Judges, and WOLLENBERG,** District Judge.

J. JOSEPH SMITH, Circuit Judge:

Eldon C. Hart is an aviation enthusiast of long standing. He now appeals from a decision of the National Transportation Safety Board (hereinafter the NTSB) finding that Hart had violated 14 C.F.R. § 61.-59(a)(2) [1] and ordering that Hart's flight instructor certificate be suspended for nine months.

For the reasons stated below, we remand this case for further proceedings before the NTSB. Further proceedings are required

---

\* The Honorable J. Joseph Smith, Senior United States Circuit Judge for the Second Circuit, sitting by designation.

\*\* The Honorable Albert C. Wollenberg, Senior United States District Judge for the Northern District of California, sitting by designation.

1. Prior to January 1, 1974, the provision presently codified as 14 C.F.R. § 61.59 was designated 14 C.F.R. § 61.48. Since 14 C.F.R. § 61.-59 is the present designation, we use it throughout this opinion.

because the NTSB applied an incorrect interpretation of § 61.59(a)(2) below and because additional factual findings must be made before § 61.59(a)(2) can be applied properly in this case.

Hart has been a leading promoter of aviation in eastern Idaho since the end of the Second World War. From 1964 until the spring of 1973, he was acting director of the aviation program of Ricks College in Rexburg, Idaho. When the college announced in May of 1972 that it was abandoning its program of aviation instruction, Hart formed a nonprofit corporation to continue the program as a separate school. All parties agree that Hart's frenetic exertions to save the aviation program put him under considerable emotional and physical strain.

Following a formal charge by the Federal Aviation Administration (FAA) and a hearing before an administrative law judge, the NTSB found that Hart had certified in the logbooks of three of his students that he had provided in-flight instruction when, in fact, Hart had not given such instruction. On these facts, the NTSB held that Hart had violated 14 C.F.R. § 61.59(a)(2) which prohibits the making of a "fraudulent or intentionally false entry" in specified aviation records.

The incorrect entries were made several months after the alleged instruction would have been given. Hart, physically sick and admittedly overworked, certified the incorrect entries without first checking his own records. Hart freely admits that the statements in question were false.

On September 14, 1973, Administrative Law Judge Harley G. Moorhead found that Hart's actions were "more consistent with inattention than with an outright attempt to defraud anyone." Indeed, Judge Moorhead specifically found that Hart "was not engaged in a scheme to defraud."

However, while Judge Moorhead ruled that Hart had not acted fraudulently, he did rule that Hart had made "intentionally false" statements within the meaning of 14 C.F.R. § 61.59(a)(2).

Consequently, the administrative law judge ordered that Hart's flight instructor certificate be revoked.

On appeal, the NTSB adopted the position that an entry is "intentionally false" within the meaning of § 61.59(a)(2) if the entry is factually incorrect (which is concededly the case here) and if the maker of the incorrect statement intends to make that statement. In short, it was the position of the NTSB that a person can make an "intentionally false" statement within the meaning of § 61.59(a)(2) without knowing that the statement he is making is false.

The NTSB agreed with Judge Moorhead that Hart did not have an intention to deceive when he signed the incorrect entries in his students' logbooks. The NTSB also agreed that Hart's statements were nevertheless "intentionally false" within the meaning of § 61.59(a)(2).

However, the NTSB decided that a nine-month suspension of Hart's instructor certificate was sufficient penalty. From this decision, Hart now appeals.

## I. FRAUD AND INTENT: ELEMENTS OF THE OFFENSE UNDER § 61.59(a)(2)

■ There has been disagreement throughout this case as to the proper construction of 14 C.F.R. § 61.59(a)(2).[2] It has been Hart's position that the terms "fraudulent" and "intentionally false" in § 61.-59(a)(2) are synonymous and that, therefore, the finding of the NTSB that Hart did not act "fraudulently" necessarily implies that his statements were not "intentionally false" since the two terms, Hart asserts, mean the same thing.

---

**2.** 14 C.F.R. § 61.59(a)(2) reads as follows:
(a) No person may make or cause to be made——

\* \* \* \* \* \*

(2) Any fraudulent or intentionally false entry in any logbook, record, or report that is required to be kept, made, or used, to show compliance with any requirement for the issuance, or exercise of the privileges, of any certificate or rating under this part. . . .

This contention was rejected by the administrative law judge and by the NTSB, and properly so. On its face, § 61.59(a)(2) prohibits statements which are "fraudulent *or* intentionally false," thereby indicating that there are two different offenses which the regulation proscribes (emphasis added). See, *e. g., Merchants Fire Assurance Corp. v. Lattimore,* 263 F.2d 232, 240–41 (9th Cir. 1959); *Adolfson v. United States,* 159 F.2d 883, 885–86 (9th Cir.), *cert. denied,* 331 U.S. 818, 67 S.Ct. 1307, 91 L.Ed. 1836 (1947); *Barkdoll v. United States,* 147 F.2d 617, 618 (9th Cir. 1945).

If the term "fraudulent" is synonymous with the expression "intentionally false," the regulation is hopelessly redundant and one or the other phrase is surplusage. Of course, in the construction of administrative regulations, as well as statutes, it is presumed that every phrase serves a legitimate purpose and, therefore, constructions which render regulatory provisions superfluous are to be avoided. *Jay v. Boyd,* 351 U.S. 345, 360–61, 76 S.Ct. 919, 928, 100 L.Ed. 1242, 1255 (1956); *Klein v. Republic Steel Corp.,* 435 F.2d 762, 766 (3d Cir. 1970); *Rucker v. Wabash R.R.,* 418 F.2d 146, 149 (7th Cir. 1969) ("Administrative regulations, like statutes, must be construed by courts, and the same rules of interpretation are applicable in both cases"); *Consolidated Flower Shipments, Inc. v. Civil Aeronautics Board,* 205 F.2d 449, 450 (9th Cir. 1953).

In short, it makes more sense to view § 61.59(a)(2) as proscribing two overlapping, but nevertheless separate offenses, one involving fraud, the other involving "intentional" falsity.

Having decided that § 61.59(a)(2) establishes two offenses, it is necessary to define and distinguish the elements of both.

■ The concept of "fraud" is one which arises frequently in the law and which is therefore well-defined. The Supreme Court has identified the elements of fraud as consisting of

(1) a false representation (2) in reference to a material fact (3) made with knowledge of its falsity (4) and with the intent to deceive (5) with action taken in reliance upon the representation.

*Pence v. United States,* 316 U.S. 332, 338, 62 S.Ct. 1080, 1083, 86 L.Ed. 1510, 1515 (1942); *United States v. Kiefer,* 97 U.S.App.D.C. 101, 228 F.2d 448 (1955), *cert. denied,* 350 U.S. 933, 76 S.Ct. 305, 100 L.Ed. 815 (1956). Since this traditional definition of fraud is well-established, it is unlikely that the draftsman of § 61.59(a)(2) would have intended to use the word otherwise without saying so.

■ We further conclude that the elements of intentional false statement for the purpose of § 61.59(a)(2) are the first three elements of fraud: falsity, materiality and knowledge. Thus, intentional false statement is a lesser included offense within fraud. Thus, for both offenses, the person making the false entry must know of such falsity. However, fraud requires at least one additional element, *i. e.,* an intent to deceive.

■ The FAA argues that knowledge of falsity is not a required element for intentional false statement under § 61.59(a)(2). While the NTSB agreed with that construction of § 61.59(a)(2), we do not. And, indeed, at oral argument, attorneys for the government disavowed the NTSB's interpretation of § 61.59(a)(2).

In effect, the FAA and NTSB would interpret § 61.59(a)(2) as establishing strict liability: the making of a false statement would be punishable, under their interpretation of § 61.59(a)(2), even if the person who made the statement did not know the statement to be false.

The obvious problem with this interpretation is that it effectively construes the term "intentionally" out of the regulation. The use of the word "intentionally," however, must be assumed to impart a *mens rea* requirement to the regulation. Were this not so, the draftsman of § 61.59(a)(2) could have defined the offense as the making of a false statement without any reference to the mental state of the person who makes the entry. Since, however, § 61.59(a)(2) explicitly includes an intent requirement, it

is inconsistent to read the regulation as establishing strict liability.

Indeed, the Supreme Court has clearly indicated that *scienter* requirements, such as that established by § 61.59(a)(2), are not to be read out of administrative regulations when the express language of those regulations uses "the commonly understood terminology of intentional wrongdoing." *Ernst & Ernst v. Hochfelder,* —— U.S. ——, ——, 96 S.Ct. 1375, 1391, 47 L.Ed.2d 668, 689, (1976).

We conclude that § 61.59(a)(2) must be construed to require actual knowledge of falsity. It is readily conceded that fraud requires such knowledge. *Pence, supra; Kiefer, supra.* Since "a word is known by the company it keeps," (*noscitur a sociis*) it is unlikely that the draftsman of § 61.59 was establishing both strict and *scienter* liability with the simple phrase "fraudulent or intentionally false." *Jarecki v. G. D. Searle & Co.,* 367 U.S. 303, 307, 81 S.Ct. 1579, 1582, 6 L.Ed.2d 859, 863 (1961).

It may, indeed, be a sound policy, as the FAA suggests, for strict liability to apply in this or similar situations. The problem is that § 61.59(a)(2) does not establish it.

■ It is true, as the FAA asserts, that an administrative interpretation of a statute or regulation is to be accorded deference in judicial deliberations. However, when, as here, the administrative construction is clearly contrary to the plain and sensible meaning of the regulation, the courts need not defer to it. *White v. Bloomberg,* 345 F.Supp. 133, 147 (D.Md. 1972); *Francis v. Davidson,* 340 F.Supp. 351, 368 (D.Md.), *aff'd,* 409 U.S. 904, 93 S.Ct. 223, 34 L.Ed.2d 168 (1972).

■ Finally, it should be noted that the concept of fraud in § 61.59(a)(2) is not rendered superfluous by the interpretation of "intentionally false" advanced here. It is true that one who makes a fraudulent statement must, under our construction of § 61.59(a)(2), also make a statement which is intentionally false since intentional falsity is a lesser included offense under fraud. However, the specification of fraud serves

to indicate that there are varying degrees of culpability under § 61.59(a)(2) and that such degrees of culpability are to be considered in the choice of punishment.

In short, the administrative interpretation of § 61.59(a)(2) advanced below, which essentially establishes a strict liability offense, is incorrect since it violates the common and normal meaning of the phrase "intentionally false." A fair reading of § 61.59(a)(2) indicates a desire to require *scienter, i. e.,* knowledge of falsity, for liability. If the FAA thinks it would be better to establish strict liability, it is free to seek amendment of the regulation.

## II. THE FACTUAL FINDINGS BELOW: THE NEED FOR REMAND

■ Judge Moorhead and the NTSB found that Hart had no intention to deceive when he entered incorrect entries into his students' logbooks. That finding is supported by substantial evidence and should not be overturned on appeal. 49 U.S.C. § 1486(e). Hart's character, his unblemished record, his cooperation with the FAA investigation of this incident, his failure to alter his other logbooks to conform to the entries in those of his students, his physical condition at the time of the entries, the time pressure which Hart was under, Hart's demeanor—all these circumstances provide substantial evidence for the finding that Hart lacked an intent to defraud.

Thus, if Hart did violate § 61.59(a)(2), it must be that he made an "intentionally false" statement, *i. e.,* that he knew the entries were false when he made them, even though he did not act with an intent to deceive.

The problem this court confronts is that neither Judge Moorhead nor the NTSB squarely addressed the issue of Hart's knowledge of falsity. Apparently, neither felt it necessary since both viewed § 61.-59(a)(2) as establishing strict liability for false statements. Since Hart admitted that the entries were false, the issue of Hart's *scienter* at the time the entries were made was not explicitly addressed.

Possibly the judge and the NTSB sought to spare Hart the obloquy of the direct finding, although there are indications that the administrative law judge and the NTSB believed that Hart was unaware of the falsity of the entries he made. Certainly, that is one possible interpretation of the finding that the false entries were the result of "inattention."

However, there are other comments by the NTSB which may be interpreted to the contrary. In particular, the NTSB said (somewhat obliquely) that Hart knew "the nature of the data he was signing." Does this mean that Hart knew the entries were false? We do not know.

In short, the finding of the NTSB on the issue of knowledge is understandably ambiguous because the NTSB incorrectly thought that knowledge was not a requisite element for a violation of § 61.59(a)(2).

Accordingly, we remand the case to the NTSB, in light of the correct legal standards, to rule on the factual issue of Hart's *scienter* at the time he entered the false statements into his students' logbooks. Remanded.