Jeanine R. SMITH, Successor Party in Interest, Rosette V. Guidet, Deceased, Plaintiff-Appellant,

v.

Joseph A. CALIFANO, Jr., Secretary of H. E. W., Defendant-Appellee.

No. 77–1296.

United States Court of Appeals, Ninth Circuit.

March 9, 1979.

Rehearing Denied June 4, 1979.

---

4. Rules of Civil Procedure in the State of Alaska.

Thomas E. Hookano (argued), Sacramento, Cal., for plaintiff-appellant.

Dwayne Keyes, U. S. Atty., Sacramento, Cal., William Kanter, Atty. of Dept. of Justice, Washington, D. C., Leonard Schaitman, Atty. (argued), Dept. of Justice, Washington, D. C., for defendant-appellee.

Before MERRILL and CHOY, Circuit Judges, and MURRAY,* District Judge.

CHOY, Circuit Judge:

Jeanine R. Smith, as successor in interest to Rosette V. Guidet, appeals from the district court's granting of summary judgment in favor of the Secretary of Health, Education and Welfare (the Secretary). We affirm.

* The Honorable William D. Murray, Senior United States District Judge for the District of Montana, sitting by designation.

## I. *Statement of the Case*

The parties are agreed on the essential facts. Ms. Smith's grandmother, Rosette V. Guidet, was born in 1895. She was widowed and suffering from a sight limitation and amputated leg. On January 1, 1974, Mrs. Guidet was placed in a board and care facility by Smith's husband with the assistance of the Sacramento County Welfare Department. Though it was understood that the costs of care would be paid by public assistance programs,[1] Mr. Smith signed the admissions agreement, providing for payment of $250 a month in advance.

In late January and early February, Mrs. Guidet completed the necessary applications for supplemental security income under Title XVI of the Social Security Act (the Act), 42 U.S.C. § 1381. Mrs. Guidet died on March 6, 1974, before the Social Security Administration (SSA) completed its processing of her application. Without completing an eligibility determination,[2] the SSA denied payment to Mrs. Smith or her successors because:

> Section 1631(b) of the Social Security Act provides that money due a supplemental security income recipient who dies may be paid only to the deceased individual's surviving husband or wife who was also a supplemental security income recipient in the month the deceased individual died. If there is no such surviving husband or wife, the payments due the deceased recipient cannot be made to anyone.

Upon appeal, an administrative law judge (ALJ) concluded that Mrs. Guidet's benefits for January and February should be paid either to the health facility or "to another appropriate representative payee." The ALJ wrote:

> [I]f a person entitled to supplemental security income payments dies before receiving them, . . . payment, wholly or in part, may be made to a representative payee, to be used solely to reimburse . . . for necessaries furnished to the deceased applicant during the period for which the benefits are due, if such necessaries were provided in reasonable reliance on the needy applicant's future payment for such necessaries out of supplemental security income payments not yet received but to which entitlement existed for the period of furnishing such necessaries.

The Appeals Council of HEW on its own motion reviewed the ALJ's decision. Rejecting the ALJ's conclusion, the Appeals Council wrote:

> Where an individual has died, there can be no payment to her even through a representative payee. Similarly, the applicant's attorney argues in his excellent brief that under Section 416.601(b) of the Regulations, payment to a representative payee constitutes payment to an eligible individual. The Appeals Council does not disagree with this contention; however, it is evident from Section 416.601(a) that payment through a representative payee is contemplated only where the eligible individual is living.

Ms. Smith then sought review of the Appeals Council's decision in the district court.[3] Noting that the health facility had not yet received payment, Ms. Smith asked that the district court reverse the Appeals Council's decision as legally erroneous, invalidate those regulations that she asserted were inconsistent with a proper reading of

1. In his findings of fact, adopted by the Appeals Council, the administrative law judge wrote:

 The placement was made with the understanding that Rosette V. Guidet would be eligible to receive Supplemental Security Income benefits for her board and care.

2. The administrative law judge noted: "Although at the time some questions were unsolved, the present record does not reflect any reason to deny payment other than the applicant's death." The Government acknowledges

that for purposes of this appeal, it should be assumed that there was no reason to deny benefits for January and February other than Mrs. Guidet's death.

3. The parties correctly assert that the Appeals Council's decision represented a final administrative decision appealable in district court under 42 U.S.C. §§ 405(g) and 1383(c). The district court's grant of summary judgment constitutes a final judgment, appealable to this court under 28 U.S.C. § 1291.

the Act, direct the Secretary to pay Mrs. Guidet's benefits "to an appropriate representative payee," and award costs and attorneys' fees. On cross motions for summary judgment the district court granted the Secretary's motion and denied Ms. Smith's motion.[4]

## II. Interpretation of § 1631

The parties agree that the payment involved in the present dispute constitutes an underpayment under the Act. Section 1631(b) of the Act, 42 U.S.C. § 1383(b), provides in part:

> Whenever the Secretary finds that more or less than the correct amount of benefits has been paid with respect to any individual, proper adjustment or recovery shall . . . be made by appropriate adjustments in future payments to such individual or by recovery from or *payment to such individual or his eligible spouse* (or by recovery from the estate of either). . . .

(Emphasis added). The Secretary argues that this provision and the regulations adopted thereunder[5] prevent his making posthumous underpayments to anyone except an eligible spouse. *See* 40 Fed.Reg. 47762 (1975); 39 Fed.Reg. 2012 (1974). Ms. Smith counters that subsection (b) does not proscribe payment to appropriate "representative payees." We believe that the Secretary's interpretation is correct.

First, the language of § 1631(b) is clear on its face. It specifically limits the Secretary to giving underpayments only to "such individual or his eligible spouse." By contrast, where Congress intended to allow payments to other individuals, it specified such allowance, as in subsection (a)(2) of § 1631.[6] As we wrote in another context,

"[t]he language of a statute is the best and most reliable index of its meaning, and where the language is clear and unequivocal it is determinative of its construction." *Monte Vista Lodge v. Guardian Life Insurance Co.,* 384 F.2d 126, 128 (9th Cir. 1967), *cert. denied,* 390 U.S. 950, 88 S.Ct. 1041, 19 L.Ed.2d 1142 (1968).

Second, the legislative history indicates that Congress intended that subsection (b) be interpreted in the Secretary's manner. The House Report said of the provision which became § 1631(b):

> *Overpayments and underpayments.*— . . . [I]f less than the correct amount of benefits had been paid, the Secretary would pay the balance due to the underpaid individual. If the individual dies before the amount due has been paid to him, or before he negotiates the check representing the correct payment, the amount due would be paid to his eligible spouse, if there is one, and the payment would not be taken into account in determining the spouse's need under this program. Underpayments, however, would not be paid to the estate of a deceased individual since that would not further the objective of meeting the current needs of individuals. Overpayments, on the other hand, could be recovered from the estate of a deceased individual.

H.Rep. No. 231, 92d Cong., 2d Sess., *reprinted in* [1972] U.S.Code Cong. & Admin.News 4989, 5141. Later the House Report reiterated that subsection (b)

> provides that when more or less than the correct amount of benefits has been paid to an individual, the Secretary will make proper adjustments in future payments or by recovery from or payment to such

---

**4.** This court has recently written:

> Summary judgment may be granted " 'only where there is no genuine issue of any material fact or where viewing the evidence . . . in the light most favorable to the adverse party, the movant is clearly entitled to prevail as a matter of law.' " *Caplan v. Roberts,* 506 F.2d 1039, 1042 (9th Cir. 1974). *See* Fed.R.Civ.P. 56.

*Loya v. Immigration & Naturalization Serv.,* 583 F.2d 1110, 1113 (9th Cir. 1978). The par-

ties here have agreed on the material facts, the dispute involving the proper interpretation of relevant statutes and regulations. Because the case could thus be resolved as a matter of law, summary judgment was the proper procedural device.

**5.** *See* note 7 *infra.*

**6.** *See* page 157 *infra.*

individual or his eligible spouse, or by recovering from the estate of either
. . . .
*Id.* at 5326. These comments demonstrate that Congress intended subsection (b) to operate as the Secretary here contends.

▮ Third, though the courts remain the final interpreters of an act of Congress, *see FMC v. Seatrain Lines, Inc.,* 411 U.S. 726, 745–46, 93 S.Ct. 1773, 36 L.Ed.2d 620 (1973); *Hart v. McLucas,* 535 F.2d 516, 520 (9th Cir. 1976), the courts have also repeatedly recognized that an administrative agency's reasonable interpretation of the statute which it administers is deserving of considerable respect. *See New York Department of Social Services v. Dublino,* 413 U.S. 405, 421, 93 S.Ct. 2507, 37 L.Ed.2d 688 (1973); *Udall v. Tallman,* 380 U.S. 1, 16–17, 85 S.Ct. 792, 13 L.Ed.2d 616 (1965); *White v. United States Civil Service Commission,* 468 F.2d 1357, 1358 (9th Cir. 1972).[7] In the instant case the Secretary's reasonable reading of the Act is consistent with both the language of the statute and congressional pronouncements. We are thus most

---

7. The Secretary's regulations are consistent with his interpretation of subsection (b). Section 416.542(b), 20 C.F.R., reads in part:

If a recipient dies before the amount due him has been paid to him, or before he endorses the check representing the correct payment, the amount of the underpayment may be paid only to his surviving spouse and then only if such spouse was eligible for supplemental security income benefits and was living with the underpaid recipient when he died or was not separated from him for 6 months at the time of death. No underpayment may be paid to the estate of any underpaid recipient, the estate of the surviving spouse, or to any survivor other than the living-with eligible spouse.

If the Secretary's regulations conflicted with the proper meaning of the statute they were intended to implement, they would of course be invalid. *See Townsend v. Swank,* 404 U.S. 282, 286, 92 S.Ct. 502, 30 L.Ed.2d 448 (1971); *Hart v. McLucas,* 535 F.2d 516, 520 (9th Cir. 1976). But where the regulations are reasonable and reflect the language and policy underlying the statute, the courts should carefully consider the regulations in determining the proper interpretation of the statute. *See Northern Indiana Pub. Serv. Co. v. Porter County Chapter of Izaak Walton League of America, Inc.,* 423 U.S. 12, 15, 96 S.Ct. 172, 46 L.Ed.2d 156 (1975); *Ehlert v. United States,* 402 U.S. 99, 105, 91 S.Ct. 1319, 28 L.Ed.2d 625 (1971); *Bone v. Hibernia Bank,* 493 F.2d 135, 139 (9th Cir. 1974).

Ms. Smith refers to § 416.601, which reads in part:

(a) . . . When it appears to the Administration that the interest of a recipient of payments under title XVI . . . would be served thereby, certification of payment may be made by the Administration . . . either for direct payment to such recipient, or for his use and benefit to a relative or some other person (including an appropriate public or private agency) selected by the Administration as the "representative payee" of the recipient. . . .

(b) . . . Payments made in accordance with paragraph (a) of this section to a representative payee of an eligible individual or eligible spouse shall constitute payments to such eligible individual or eligible spouse.

Ms. Smith contends that § 416.601 applies to § 1631(b) and therefore payment to either her or the health facility as a "representative payee" would constitute payment to "such individual" within the meaning of § 1631(b). The Secretary responds that § 416.601 cannot be applied to § 1631(b).

We think the Secretary is correct. To invoke the § 416.601(b) equivalency rule in the context of § 1631(b) would mean that the Secretary could pay any "appropriate person." This would in effect abrogate the limits of § 1631(b) that Congress intended to apply to underpayments. Instead, underpayments would essentially be subject to the same rule as are regular payments under § 1631(a)(2). That is, payment could be made to such individual or eligible spouse—the scheme common to subsections (a)(2) and (b)—or to an appropriate other person—a method statutorily limited to subsection (a)(2). We cannot disregard congressional intent to limit underpayments under subsection (b) more than regular payments under subsection (a)(2).

This conclusion is reinforced by the language of § 416.601. That language parallels the language Congress employed in § 1631(a)(2), suggesting that the Secretary intended the regulation to apply in that context and not in the different § 1631(b) payment scheme. Finally, we note that the Secretary's reasonable interpretation of his own regulation should be accorded great respect by a court interpreting the regulation. *See Northern Indiana Pub. Serv. Co.,* 423 U.S. at 15, 96 S.Ct. 172; *Ehlert,* 402 U.S. at 105, 91 S.Ct. 1319; *Bone,* 493 F.2d at 139. This is particularly so here because Congress gave to the Secretary the task of implementing congressional intent. § 1631(a)(1), 42 U.S.C. § 1383(a)(1). In sum, we conclude that the Secretary's reading of his regulations is consistent with and supports the proper reading of § 1631.

reluctant to disregard the Secretary's interpretation.

We conclude, as did the Appeals Council, that subsection (b) does not authorize the disbursement of Mrs. Guidet's aid to a "representative payee."

■ Though apparently acknowledging that on its face subsection (b) does not authorize such payment, Ms. Smith argues that when that subsection is read in conjunction with other parts of the Social Security Act a statutory basis for such payment emerges. First, she notes that the ALJ found that because Title II of the Social Security Act provides for making underpayments to individuals other than the eligible person's surviving spouse, "[t]he parts of the statute must be read reasonably together to accomplish their purpose. The authorization in the one subsection [of Title II] is meant to be understood in all the other sections [of the Act, including Title XVI]."

Section 204(a)(2) and (d) of Title II, 42 U.S.C. § 404(a)(2) & (d), includes very detailed provision for making underpayments to persons other than a deceased individual's spouse, including to "the legal representative of the estate of the deceased." § 204(d)(7). But when Congress wished to incorporate parts of Title II into the newer Title XVI, it did so explicitly. For example, subsection (d)(1) of § 1631, the very section with which we are concerned, selectively incorporates into Title XVI procedures specified in parts of Title II. Moreover, we cannot infer such incorporation here because the Title II provision for paying "the legal representative of the estate" conflicts directly with the language of § 1631(b) and the House Report's statement that "[u]nderpayments . . . would not be paid to the estate of a deceased since that would not further the objective of meeting the current needs of individuals."

Ms. Smith responds next that § 1631(a)(2) indicates the propriety of payment to a payee other than the eligible individual or his spouse. That provision reads in part:

Payments of the benefit of any individual may be made to any such individual or to his eligible spouse (if any) or partly to each, or, if the Secretary deems it appropriate to any other person (including an appropriate public or private agency) who is interested in or concerned with the welfare of such individual (or spouse).

Regardless of the proper interpretation of this provision *vis-a-vis* regular SSI payments, Congress has provided that underpayments should be distributed in accordance with subsection (b), specifically dealing with underpayments. And "[f]undamental maxims of statutory construction require that a specific section be found to qualify a general section. A specific statutory provision will govern even though general provisions, if standing alone, would include the same subject." *Monte Vista Lodge,* 384 F.2d at 129; *see Clifford F. MacEvoy Co. v. United States ex rel. Calvin Tompkins Co.,* 322 U.S. 102, 107, 64 S.Ct. 890, 88 L.Ed. 1163 (1944).

Ms. Smith argues finally, and most powerfully, that her construction better satisfies the general congressional policy underlying Title XVI of helping the elderly and disabled. She notes that families will be less willing to assist their aged and disabled relatives if they fear that they will not obtain reimbursement should their relative pass away before payment. She also notes that the Secretary's interpretation in essence "rewards" the Secretary for failing to process claims quickly and accurately because the Government may avoid paying monies otherwise due should an eligible individual without an eligible spouse die before payment (as in this case). Finally, she contends that the Secretary's interpretation creates an incongruous scheme wherein the Secretary can pay regular SSI benefits under subsection (a)(2) but not underpayments under subsection (b) to individuals other than an eligible spouse.

We have a good deal of sympathy for Ms. Smith's policy claims. We are afraid, however, that in light of the legislative history and language of § 1631(b), we must reject her effort to redesign the statute. For as the Supreme Court has recently written:

[A]s the second Mr. Justice Harlan said, when speaking for the Court in another context, a statute "is not an empty vessel into which this Court is free to pour a vintage that we think better suits present-day tastes." *United States v. Sisson*, 399 U.S. 267, 297[, 90 S.Ct. 2117, 2133, 26 L.Ed.2d 608] (1970). Considerations of this kind are for Congress, not the courts.

*National Broiler Marketing Association v. United States*, 436 U.S. 816, 827, 98 S.Ct. 2122, 2130, 56 L.Ed.2d 728 (1978).[8]

AFFIRMED.

MERRILL, Circuit Judge, dissenting:

I dissent. I would reverse and restore the decision of the ALJ.

Under the Secretary's construction of § 1631(b), as adopted by the majority opinion, the recipient is deprived of any ability to secure credit on the basis of his SSI payments that would survive death. Without such credit, private homes for the aged and infirm are not likely to welcome those without independent financial resources and the Act fails to provide adequately for those most in need of their SSI payments. The Act, with the Secretary's blessing, seems to work most zealously against its own apparent purpose.

The majority opinion relies on the fact that § 1631(b) does not include the words "other persons" which are to be found in § 1631(a). However Regulations 416.601(a) and (b) are broadly stated to permit payment to one other than the eligible individual in all cases where it appears to the administration that the interest of the recipient would be served. That should cover this case.

In footnote 7 the majority opinion rejects the application of those regulations to § 1631(b), stating that to apply them would "abrogate the limits of [that section] that Congress intended to apply to underpayments. Instead, underpayments would essentially be subject to the same rule as are regular payments under § 1631(a)(2)."

If full force is to be given to the literal distinction between §§ 1631(a) and (b), on which the majority relies, the result would be that while regular payments can be made to a representative payee, adjustments for underpayments never can. I can see little sense in such a distinction. But more: As I understand the practices of the Secretary and his interpretations of the regulation, the emphasis has not been on the difference between regular payments and underpayments. Rather, it has been on whether the recipient is living or dead. The Appeals Council in this case relied on this living/dead distinction as quoted by the government in its brief. "[I]t is evident from § 416.601(a) that payment through a representative payee is contemplated only where the eligible individual is living." The cited regulation does not expressly impose this condition. But in any event it would appear that the Secretary quite sensibly does not hesitate to adjust for an underpayment by paying a representative if the recipient is alive.

The legislative history as quoted in the majority opinion explicitly provides only that underpayments are not to be made to *the estate* of a deceased recipient. This makes sense to me, since otherwise general creditors could reach the payment. However, nothing in the quoted legislative histo-

8. In the interpretation of his regulations the Secretary has recognized the same limitation. In January of 1974 the Secretary first proposed regulations dealing with underpayments, writing: "If there is no surviving eligible spouse, no one can receive the underpayment." 39 Fed. Reg. 2012 (1974). After receiving comments about the proposed regulations, the Secretary noted:

With respect to the limitation . . . on payment of an underpayment due a deceased individual, the comments said the prohibition

against paying underpayments to the estate of the recipient seemed to violate the spirit of the Social Security Act and might deprive an individual responsible for the medical or burial costs of funds to pay them. However, section 1631(b) of the Social Security Act authorized the payment of an underpayment only to a surviving spouse eligible for supplemental security income and living with the individual when he died.

40 Fed.Reg. 47762 (1975).

ry·would preclude applying Regulation 416.-601(b) to § 1631(b) and to Regulation 416.-542(b) so long as payment did not reach the estate. The ALJ as quoted in the majority opinion showed just how that could be done. The payment could be made directly to the representative payee on his making a proper showing of entitlement.

The question, then, as I perceive it, is not whether the statutory distinction between underpayment and regular payment must be respected literally. (The Secretary himself apparently does not respect it.) The question is whether (assuming that payment is not made to the estate of a deceased recipient) the distinction between living and dead recipients (not required by the statute, or even explicitly by the regulations), can be said to satisfy the general congressional policy underlying the Act. I would say no.