894 F.2d 408
 Unpublished Disposition
NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
William G. WALTON, Petitioner,
v.
The NATIONAL TRANSPORTATION SAFETY BOARD, and Administrator,
Federal Aviation Administration, Respondents.
 No. 88-4087.
 United States Court of Appeals, Sixth Circuit.
 Jan. 26, 1990.
 
 Before KEITH, NATHANIEL R. JONES and ALAN E. NORRIS, Circuit Judges.
 PER CURIAM.
 
 
 1
 Petitioner William G. Walton requests reversal of an order of the National Transportation Safety Board (NTSB) suspending his Airline Transport Pilot Certificate for a period of 90 days. For the following reasons, we affirm.
 
 I.
 
 2
 Walton owns and operates both Tomahawk Airways, Inc., an air taxi service which transports passengers and cargo, and W.W. Aircraft Co., an entity through which Walton leases planes to and provides sales and management for Tomahawk Airways. Walton was the holder of an Airline Transport Pilot Certificate and piloted one of his company's planes. On October 18, 1985, Tomahawk Airways' Air Taxi/Commercial Operator (ATCO) Certificate was suspended for a period of seven months as a result of inadequate recordkeeping. W.W. Aircraft Co. is not a holder of an ATCO certificate. In November 1985, Walton entered into a written agreement with John Flewellen, the president of Flewellen Aviation, whereby Walton leased a plane to Flewellen for 12 months beginning October 19, 1985. The written agreement further provided that Flewellen would act as subcontractor to W.W. Aircraft to service the latter company's contract with Pony Express Courier Corp. The two parties also orally agreed that Walton would be permitted to conduct certain other flights for compensation and hire, or charter flights under the aegis of Flewellen's ATCO certificate.
 
 
 3
 Flewellen testified that in late January 1986 Ted Cain, Flewellen's Director of Operations, Walton and he had a conversation during which Walton stated that he was not doing any on-demand charters and agreed that it was not necessary for him to be listed under Flewellen's ATCO certificate. It is not clear whether Walton subsequently was informed that he was being removed from the list of pilots operating under Flewellen's certificate. Thereafter, in a letter dated February 26, 1986, Cain informed the FAA that Flewellen was removing Walton's name from the list of pilots operating under its ATCO certificate. However, Walton was not sent a copy of this letter, and it was his belief that he could operate under Flewellen's certificate for the duration of the lease. On April 2 and 10, 1986, Walton was the pilot-in-command on two flights, which were conducted for compensation and hire. These flights were made pursuant to a contract entered into by W.W. Aircraft Co., which, as noted earlier, lacks an ATCO certificate.
 
 
 4
 On March 12, 1987, the Administrator of the Federal Aviation Administration (FAA), revoked Walton's Airline Transport Pilot Certificate for one year on the grounds that Walton violated Federal Aviation Regulation (FAR) Sec. 135.5, 14 C.F.R. Sec. 135.5,[1] by operating an aircraft for compensation or hire without an ATCO certificate and appropriate operating specifications. Walton admitted making the alleged flights, but asserted that he was operating under the ATCO certificate of Flewellen Aviation d/b/a Chattanooga Jet Center. After an administrative hearing, the administrative law judge (ALJ) reasoned that "maybe this case turns on whether or not [Walton] had knowledge, actual knowledge, of the cancellation of his privileges," and concluded that Walton did not have full unequivocal notice that his right to operate under Flewellen's ATCO certificate had ended. However, the ALJ determined that Walton did not
 
 
 5
 act [ ] with the highest degree of responsibility, prudence and care, and particularly as an airline transport pilot, and particularly in view of the fact of the ordeal he went through last year where his company's operating certificate, was suspended. It [appeared to the ALJ] that he would have been more vigilant and would have done more than file a flight plan, particularly ... for these flights, and that he would have had some additional and earlier contact with Mr. Flewellen and with Flight Dispatch.
 
 
 6
 J.App. at 15. The ALJ therefore affirmed the Administrator's order of revocation of Walton's pilot license for violating 14 C.F.R. Sec. 135.5, but reduced the period of suspension from one year to 90 days.
 
 
 7
 On appeal, the full National Transportation Safety Board affirmed the ALJ's decision on June 27, 1988. The Board stated that it was in agreement with the ALJ "that the two flights cited in the complaint were conducted in violation of FAR Sec. 135.5, and that the 90-day suspension imposed by the law judge is compatible with the Board precedent." Because the parties entered into a verbal and informal agreement, the Board stated that it was incumbent upon Walton to insure that he was operating under an ATCO certificate.
 
 II.
 
 8
 Pursuant to 49 U.S.C. Sec. 1486(e), "[t]he findings of fact by the Board or Secretary of Transportation, if supported by substantial evidence, shall be conclusive." Further, because it is clear that this dispute centers upon the interpretation of an administrative regulation, the National Transportation Safety Board's interpretation of its own regulation is entitled to great deference unless it is plainly erroneous or inconsistent with the regulation. Hart v. McLucas, 535 F.2d 516, 520 (9th Cir.1976). This court sets aside agency action that is arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law. Brown v. National Transportation Safety Board, 795 F.2d 576, 578 (6th Cir.1986).
 
 
 9
 Walton argues that he did not violate Sec. 135.5 because he did not receive notice of removal from the list of covered pilots. Walton maintains that the ALJ actually found no violation of Sec. 135.5. Walton quotes a portion of the decision which appears to indicate that he "did not violate Sec. 135.5" because at the time of the subject flights he believed he was operating under the aegis of Flewellen's ATCO certificate. (J.A. at 267-68.) Having found no violation of Sec. 135.5 to be present, Walton argues that the suspension must therefore have been premised on a violation of another regulation, FAR Sec. 135.7.[2] A separate violation of Sec. 135.7 premised on failure to satisfy requirements concerning equipment, maintenance, and recordkeeping was alleged in the administrator's original order of revocation, but dropped in the amended order of revocation. Walton construes the ALJ's statements that "he should have done more than file a flight plan" and "he [should] have had some additional and earlier contact" as finding a violation of dispatch and recordkeeping requirements under Sec. 135.7. Therefore, Walton concludes that the suspension is in violation of due process because he did not receive notice of any charges under Sec. 135.7.
 
 
 10
 We find Walton's argument unavailing. Even though he did not receive actual notice of removal from the list of covered pilots, such notice is not necessary to state a violation of Sec. 135.5 under the circumstances of this case. Because Walton's own ATCO certificate was under suspension and because Walton knew other arrangements had to be made if he was to continue flying, affirmative steps on the part of the pilot were required to insure that his operations were legal. In Metro Air System, Inc. 2 N.T.S.B. 285 (1973), aff'd sub nom. Metro Air System, Inc. v. N.T.S.B., Nos. 73-1328/1536 (6th Cir. Nov. 15, 1974), an air carrier whose own ATCO certificate was under suspension continued operations by contracting to use the name and certificate of Bridges Aircraft Sales & Service, Inc. However, the ATCO certificate of Bridges was, by its terms, not transferrable. Metro Air contended that it was affirmatively misled by the Administrator's delay in taking action regarding this conduct until Metro Air's previous suspension had expired. The Board determined that Metro Air should have taken additional steps to assure that its operations were not in violation of the regulations.
 
 
 11
 We also find Walton's additional argument that the ALJ must have based its case on a violation of Sec. 135.7 to be frivolous. It is clear that the ALJ's discussion of what Walton was obligated to do was necessary to determine whether he violated Sec. 135.5. The administrator's prima facie case consisted of documentary evidence, Walton's admissions in his answer, and the testimony of the person who employed Walton to undertake the subject flights; it was Walton who raised the issue of compliance with Sec. 135.7 requirements in the belief that such evidence was relevant to the issue of whether Walton should have known that he was not on Flewellen's certificate.
 
 
 12
 In conclusion, the Board's apparently longstanding interpretation of its regulation not to require notice or knowledge under the proper circumstances is not plainly erroneous or inconsistent with the regulation. Deference is due to the agency's determination that, when an operator's own ATCO certificate is suspended and operations are continued under the auspices of another operator's ATCO certificate, affirmative obligations are placed on the operator to assure that he is not flying without an ATCO certificate.
 
 III.
 
 13
 For the foregoing reasons, the decision of the National Transportation Safety Board is AFFIRMED.
 
 
 
 [1]
 This regulation states:
 Sec. 135.5 Certificate and operations specifications required.
 No person may operate an aircraft under this part without, or in violation of, an air taxi/commercial operator (ATCO) operating certificate and appropriate operations specifications issued under this part, or, for operations with large aircraft having a maximum passenger seating configuration, excluding any pilot seat, of more than 30 seats, or a maximum payload capacity of more than 7,500 pounds, without, or in violation of, appropriate operations specifications issued under Part 121 of this chapter.
 
 
 [14]
 C.F.R. Sec. 135.5
 
 
 [2]
 Federal Aviation Regulation 135.7 states:
 Sec. 135.7 Applicability of rules to unauthorized operators.
 The rules in this part which apply to a person certificated under Sec. 135.5 also apply to a person who engages in any operation governed by this part without an appropriate certificate and operations specifications required by Sec. 135.5.
 
 
 [14]
 C.F.R. Sec. 135.7