[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 09-15721
Non-Argument Calendar
_____

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
AUGUST 16, 2010
JOHN LEY
CLERK

Agency Nos. EA-5479-NTSB Order, EA-5458-NTSB

EDWARD T. JESZKA,
RAYMOND A. LEDBETTER,

Petitioners,

versus

NTSB,

Respondent.

_____

Petition for Review of a Decision of the
Department of Transportation
_____

(August 16, 2010)

Before EDMONDSON, BIRCH and CARNES, Circuit Judges.

PER CURIAM:

On April 17, 2009, the Federal Aviation Administration issued emergency

orders finding that petitioners Edward Jeszka and Raymond Ledbetter had intentionally falsified required records, in violation of 14 C.F.R. § 61.59(a)(2). The FAA's orders revoked the airman certificates of both Ledbetter and Jeszka. See 14 C.F.R. § 61.59(a)(2). Ledbetter and Jeszka appealed, and the two cases were consolidated. The administrative law judge affirmed the Administration's orders, and his ruling was in turn affirmed by the National Transportation Safety Board. The Board later denied Ledbetter and Jeszka's petition for rehearing. They have petitioned this Court for review.

I.

During February and March 2008, Jeszka was employed as an FAA inspector in the Birmingham, Alabama Flight Standards District Office (FSDO). He had been on extended sick leave since October 2006 while undergoing treatment for cancer. In order to return to his full duties at the FAA, Jeszka needed to have his Certified Flight Instructor certificate reinstated, which required him to successfully complete an oral knowledge test and a practical flight test administered by a Designated Pilot Examiner.

On March 28, 2008, Jeszka initiated an FAA online Integrated Airman Certificate and Rating Application. Jeszka was applying to reinstate his Certified Flight Inspector certificate. Later that day, Ledbetter, acting as Jeszka's

2

Designated Pilot Examiner, signed Jeszka's application. Ledbetter and Jeszka are longtime friends.

According to the application signed by both men, on March 28, 2008, Ledbetter had administered to Jeszka, and Jeszka had successfully completed, both the oral and practical tests required to reinstate his CFI certificate. The application also stated that the practical test had been administered to Jeszka at the Walker County Airport in Jasper, Alabama, using civil aircraft N272TL. Ledbetter issued a temporary airman certificate to Jeszka on that same day, March 28.

Civil aircraft N272TL is a Cessna 172 airplane owned by the family of Joey Sanders, who is a longtime friend of both Jeszka and Ledbetter. Sanders runs a business, Sanders Aviation, that is one of only two fixed base operations at the Walker County Airport. In that role, Sanders Aviation provides "services [at the airport] similar to those that a service station provides for those who operate automobiles." City of Pompano Beach v. F.A.A., 774 F.2d 1529, 1532 n.5 (11th Cir. 1985). The Walker County Airport is a small, non-commercial airport with a very low volume of flights. Sanders Aviation is located in a building attached to a hangar facing the lone runway at that airport. The building and hangar are not soundproof, and all flights taking off or landing at the Walker County Airport can be heard inside the building and hangar.

In April 2009, the FAA issued one emergency order revoking all of Ledbetter's airman certificates and another one revoking all of Jeszka's airman certificates. Those emergency orders were based on the FAA's finding that the two had violated 14 C.F.R. § 61.59(a)(2) by intentionally falsifying required records. Specifically, the FAA found that: Jeszka electronically submitted an Integrated Airman Certificate and Rating Application on March 28, 2008; based on that application, Ledbetter, acting as a Designated Pilot Examiner, issued a temporary airman certificate to Jeszka; and Ledbetter and Jeszka falsely stated on that temporary airman certificate that Jeszka had completed a practical test flight on March 28, 2008.

Jeszka and Ledbetter appealed the emergency orders and an evidentiary hearing was held before an ALJ. Sanders testified at the hearing that he stores his Cessna in the hangar attached to his fixed base operation, and the hangar is usually locked. In 2008, Sanders' Cessna flew only thirty-eight hours and was not required to keep records of its usage. Sanders treats the Cessna as "just a family plane," and he occasionally, but "[n]ot very often," allows his friends to borrow it if they ask his permission first. When someone borrows his Cessna, Sanders arranges for the aircraft to be taken out of the hangar and readied for the borrower's use. If he is present at the airport, Sanders takes the plane out himself.

4

Sanders also testified that Ledbetter and Jeszka used his Cessna on February 11, 2008, but he did not remember either of them using it after that date. He did not remember even seeing Jeszka at the Walker County Airport again until after June 2008, when Jeszka flew in a Beechcraft Barron airplane.

On cross-examination, when counsel for Ledbetter and Jeszka asked Sanders if he remembered being at the airport on March 28, 2008, he stated that nothing about that day stood out in his mind beyond the fact that he was "in and out all day." He added that if he was not running errands, he would have been at his operations at the airport. When asked if it was possible that Ledbetter had administered a check ride to Jeszka using Sanders' Cessna on March 28, Sanders replied that if such a flight did occur, it occurred without his knowledge. He explained that it would be difficult for someone to use his Cessna without his knowledge because he usually keeps it locked in the hangar, and if someone had started the airplane while he was there, he would have known it. When asked if he remembered Ledbetter and Jeszka being at the Walker County Airport on March 28, Sanders answered: "I don't remember them being there, and as far as I know, they were not there."

Ledbetter and Jeszka also testified at the hearing. Both denied that Jeszka was at the airport in Jasper, Alabama on February 11, and Ledbetter testified that

5

Sanders incorrectly informed the FAA that Jeszka had been at the airport that day. Ledbetter testified that he had never flown Sanders' Cessna without getting Sanders' permission. Both Jeszka and Ledbetter testified that Ledbetter had called Sanders to get permission to use the Cessna for the practical test on March 28.

Originally, Ledbetter and Jeszka testified that they met in Sumiton, Alabama, at around 2:30 p.m. on March 28, before riding together to the Walker County Airport. Both of them testified that Ledbetter administered the oral test to Jeszka during the drive to the airport. Ledbetter also testified that he had a conversation with Sanders after arriving at the airport, although he did not remember what they discussed.

Ledbetter and Jeszka also testified that, after arriving at the airport on March 28, they entered data into the Integrated Airman Certificate and Rating Application before conducting the practical test flight. Jeszka testified that Ledbetter entered the data into the application for him because he did not have an application account and was unfamiliar with the application system. Jeszka also testified that, following the flight, he and Ledbetter used a computer at Sanders' operation to complete the application and Jeszka's temporary airman certificate was printed after the application was completed.

The Integrated Airman Certificate and Rating Application system

6

automatically stores a variety of information, including the time that a particular event occurs. A report detailing the stored information relating to Jeszka's application revealed that he began the application process at 8:23 a.m. on March 28, and that he completed his portion of the process and electronically signed the application at 12:13 p.m. Ledbetter completed the process by signing the application as the Designated Pilot Examiner at 5:52 p.m.

When confronted with that data from the application report, Jeszka changed his story. He said that he had started the application at his home at 8:23 a.m., rather than in the afternoon at Sanders' operation. He added that Ledbetter had come by his house that morning to help him finish the initial portion of the application. Jeszka did not deny signing the application at noon, as indicated in the report. He added that Ledbetter must have been present when he signed it, because that is part of Ledbetter's duties as the Designated Pilot Examiner. Jeszka still maintained that, after the practical test flight, he and Ledbetter completed the application using a computer in the upstairs office at Sanders' Aviation. The upstairs office is Sanders' private office, and he normally keeps it secured. Jeszka testified that he was unsure if Sanders was there when he and Ledbetter completed the application, but he thought so "because there was some kind of computer glitch."

7

At the conclusion of the evidentiary hearing, the ALJ issued an oral opinion and order upholding the FAA's emergency orders. The ALJ explained that he found Sanders to be a credible witness who "delivered his testimony in a straightforward manner" and who had no motive to lie about whether he had administered a practical test to Jeszka on March 28, 2008. The ALJ also determined that Jeszka and Ledbetter were not credible witnesses. The ALJ relied on the fact that their initial version of the events of March 28 was contradicted by the information contained in the electronic application report, and both of the men had a motive to lie in order to avoid the revocation of their airman certificates. Relying on those findings, the ALJ affirmed the FAA's orders revoking the airman certificates of the two men.

Ledbetter and Jeszka appealed to the Board, which affirmed the ALJ's decision and the FAA's emergency orders revoking the airman certificates held by Ledbetter and Jeszka. The two then filed a petition for rehearing, which the Board denied. They have petitioned us for review of the Board's order affirming the decision of the ALJ and its order denying their petition for rehearing.

II.

We have jurisdiction to review final orders of the Board, 49 U.S.C. § 1153(a), (b)(3), but the scope of our review is narrow. "We uphold a decision of

8

the NTSB unless it is arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with the law, or the challenged decision is contrary to constitutional right, power, privilege, or immunity." Coghlan v. NTSB, 470 F.3d 1300, 1304 (11th Cir. 2006) (quotation marks and citation omitted). "In other words, when reviewing an agency decision under the arbitrary and capricious standard, we must defer to the wisdom of the agency provided their decision is reasoned and rational." Swaters v. Osmus, 568 F.3d 1315, 1322 (11th Cir. 2009) (quoting McHenry v. Bond, 668 F.2d 1185, 1190 (11th Cir. 1982)).

"Findings of fact by the NTSB, if supported by substantial evidence, are conclusive." Coghlan, 470 F.3d at 1304 (quoting 49 U.S.C. § 1153(b)(3)). "Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." McHenry v. Bond, 668 F.2d 1185, 1190 (11th Cir. 1982) (quotation marks omitted). In other words, substantial evidence requires "something more than a scintilla of evidence, but something less than the weight of the evidence; the possibility of drawing two inconsistent conclusions from the evidence does not prevent an administrative agency's findings from being supported by substantial evidence." Id. (quotation marks omitted).

### III.

Ledbetter and Jeszka challenge the Board's order affirming the ALJ's

9

determination that they made an intentional false statement in violation of 14 C.F.R. § 61.59(a)(2). Section 61.59(a)(2) provides in pertinent part that "[n]o person shall make or cause to be made . . . [a]ny . . . intentionally false entry in any logbook, record, or report that is required to be kept, made, or used to show compliance with any requirement for the issuance or exercise of the privileges of any certificate, rating, or authorization . . . ." 14 C.F.R. § 61.59(a)(2). In order to establish intentional falsity under § 61.59(a)(2), the FAA must show that the pilot: (1) made a false representation, (2) in reference to a material fact, (3) with knowledge that the representation was false. Hart v. McLucas, 535 F.2d 516, 519 (9th Cir. 1976); Sturgell v. Angstadt, NTSB Order No. EA-5421, 2008 WL 5373647, at *5 (Dec. 17, 2008). A violation of § 61.59(a) may result in the suspension or revocation "of any airman certificate, rating or authorization held by" the person committing the violation. 14 C.F.R. § 61.59(b).

Ledbetter and Jeszka contend that the Board erred by concluding that the FAA had shown that they violated § 61.59(a)(2). Specifically, they argue that the FAA failed to show that they did not complete a practical test flight on March 28, 2008, as they indicated on Jezka's temporary airman certificate. We are unpersuaded.

Sanders' testimony supports the Board's determination that the FAA showed

10

that the March 28 flight did not occur.  Sanders testified that he did not remember

Jeszka or Ledbetter flying his Cessna after February 11, 2008, nor did he have any

knowledge of the two men conducting a practical test flight in his Cessna on March

28, 2008, as they claimed.  Not only that but he also testified that it would have

been difficult for them to have used his Cessna without his knowledge because he

usually keeps it locked in the hangar, and he would have heard and recognized the

sound of its engine.  The ALJ determined that Sanders was a credible witness

because he had no motive to lie and because he "delivered his testimony in a

straightforward manner."  Sanders' testimony clearly supports the Board's

determination that the FAA established the falsification charge.

In an attempt to minimize the impact of Sanders' testimony, Ledbetter and

Jeszka emphasize Sanders'statement that he was "in and out all day" on March 28.

Their point is that Sanders might not have been present when they conducted the

practical test using his plane, so the flight could have occurred without Sanders'

knowledge.  That argument, however, conflicts with their own testimony.  As the

ALJ explained, both Ledbetter and Jeszka testified that they had obtained Sanders'

permission to fly the Cessna on March 28, which means that if the flight occurred

as they said, Sanders would have known about it.  Ledbetter even testified that

Sanders was present when the flight occurred.  Finally, Jeszka testified that he

11

entered the post-flight data into the online application using a computer in Sanders' private upstairs office and that he thought Sanders was present at that time. Sanders testified that he usually keeps that office secured.

In addition to Sanders' testimony, the ALJ's finding that Ledbetter and Jeszka were not credible witnesses is "a second, independent source of support for the Board's conclusion" that the FAA established a violation of § 61.59(a)(2). Swaters, 568 F.3d at 1323. The ALJ made an explicit finding that "Ledbetter and Jeszka [were] not credible witnesses as to their claim that Ledbetter administered a CFI practical examination on 3/28/2008 using Sanders' [Cessna] as stated on the online IACRA application that they both signed and filed." There is substantial evidence to support that credibility determination. See id. at 1324. As we explained in Swaters, the ALJ's credibility determination "constitutes positive evidence against [petitioners] and in support of the FAA's case." Id. The Board's conclusion that the FAA established a violation of § 61.59(a) was not arbitrary and capricious.

Ledbetter and Jeszka also contend, however, that when the Board treated Sanders' testimony as dispositive proof of falsification, it improperly departed from its precedent without explanation. See McHenry, 668 F.2d at 1192 ("'An agency must either conform to its prior norms and decisions or explain the reason

12

for its departure from such precedent.'" (quoting Miss. Valley Gas Co. v. FERC, 659 F.2d 488, 506 (5th Cir. 1981)). Specifically, they accuse the Board of misapplying Balzo v. Aviance Internat'l, Inc., NTSB Order No. EA-5421, 1993 WL 47610 (Feb. 12, 1993). In Aviance, the Board held that the ALJ placed too much weight on the recollections of several air traffic controllers in concluding that certain training flights did not occur. 1993 WL 47610, at *2. The Board noted that there was no proof offered that any of the air traffic controllers were on duty when the flights at issue supposedly occurred. Id. Also, the Board explained that the air traffic controllers' memories could not be treated as "dispositive" because the pilots accused of falsifying records identified a training flight that did occur and of which the air traffic controllers were unaware. Id.

Jeszka and Ledbetter's argument that the Board improperly departed from Aviance without explanation lacks merit. They testified that Sanders gave them his permission to fly the Cessna on March 28 and that Sanders was present when the flight occurred. In light of that testimony, the ALJ rationally distinguished Aviance from this case, concluding that "Sanders more likely than not would have been aware of it" if Ledbetter and Jeszka had flown the Cessna on March 28. The Board, in addition to agreeing with the ALJ's analysis, further distinguished Aviance from this case. It noted that Sanders' testimony was not by itself

13

dispositive because the ALJ's conclusion that Ledbetter and Jeszka did not conduct the test flight in Sanders' Cessna on March 28 as they claimed was "largely based on" the ALJ's determination that petitioners' testimony to that effect was not credible. See Swaters, 568 F.3d at 1323, 1324. Because the Board distinguished its decision in Aviance from the present case in a way that is "reasoned and rational," we must defer to its decision. McHenry, 668 F.2d at 1190.

Petitioners also contend that the Board erred by concluding that the FAA had established the materiality of the facts represented. See Hart, 535 F.2d at 519 (requiring that the false representation be made in reference to a material fact). We cannot consider that argument because Jeszka and Ledbetter failed to raise it in their appeal to the Board and have offered no explanation for that failure. See 49 U.S.C. § 1153(b)(4) ("In reviewing an order under this subsection, the court may consider an objection to an order of the Board only if the objection was made in the proceeding conducted by the Board or if there was a reasonable ground for not making the objection in the proceeding.").

IV.

Ledbetter and Jeszka also contend that the ALJ violated their due process rights by quashing subpoenas issued to two Aviation Safety Inspectors employed by the FAA. Both of those inspectors were formerly stationed at the Birmingham

14

Flight Standards District Office, although they were not employed there during the investigation that gave rise to the proceedings against Ledbetter and Jeszka. According to Jeszka and Ledbetter, those two inspectors "were willing to testify" that Sanders had problems remembering when specific flights occurred and had difficulties with record keeping. Two days before the hearing, the ALJ quashed the subpoenas after learning that Ledbetter and Jeszka had failed to obtain the prior approval of the FAA's counsel as required by 49 C.F.R. §§ 9.5 and 9.7(b). According to them, the ALJ's order quashing the subpoenas prejudiced them by depriving them of the ability to present evidence in their favor.

Ledbetter and Jeszka fail to mention that the ALJ's order quashing the subpoenas explained that, "to minimize inconvenience and expense to both parties, the two inspectors will be allowed to testify by telephone during the hearing." See 49 CFR 821.35(b)(6) (granting ALJs the power "[t]o regulate the conduct of hearings"). The ALJ's decision to allow the two investigators to testify by telephone was the result of an agreement between the FAA's counsel and the attorney who represented Jeszka and Ledbetter at the hearing before the ALJ.

Ledbetter and Jeszka never attempted to have the inspectors testify by telephone during the hearing, as agreed. "The fundamental requirement of due process is the opportunity to be heard in a meaningful time and in a meaningful

15

manner." Mathews v. Eldridge, 424 U.S. 319, 333, 96 S. Ct. 893, 902 (1976)

(quotation marks omitted). Ledbetter and Jeszka were given the opportunity to

present in a meaningful manner the testimony of the two inspectors, but they chose

to pass up that opportunity. Because any prejudice they claim was self-inflicted,

their due process argument fails.

V.

Finally, Jeszka and Ledbetter contend that the Board erred when it denied

their petition for rehearing. Under the Board's rules of practice governing cases

involving emergency orders, it will grant a petition for rehearing only if a new

matter is presented that "could not have been discovered in the exercise of due

diligence prior to the date on which the evidentiary record closed." 49 C.F.R. §

821.57(d); see Administrator v. Moore, 3 N.T.S.B. 55, 56 (March 28, 1977).

The new matter that Ledbetter and Jeszka argue warrants a rehearing is the

testimony of Jack Gray, the manager of the Walker County Airport. According to

them, they attempted to contact everyone they believed was present at the airport

on March 28, but they were unaware that Gray was present on that date and did not

discover it until after the evidentiary record was closed. According to Ledbetter

and Jeszka, the FAA's emergency procedures—specifically the short period

between the issuance of emergency orders and the evidentiary hearing before the

16

ALJ—caused their inability to discover Gray's testimony in time to present it at the hearing.

That argument is unconvincing. Walker County Airport is a small, non-commercial airport with only one runway and a low volume of flights. Gray is the manager of the airport. Given that he is a big fish in a small, still pond, we cannot say that the Board acted irrationally when it rejected the argument that Ledbetter and Jeszka could not have, in the exercise of due diligence, discovered Gray's testimony before the close of the evidentiary record. See Swaters, 568 F.3d at 1322. By February 2009, two months before the FAA even issued the emergency orders, Ledbetter and Jeszka had become aware that the FAA was investigating whether Ledbetter had administered a practical test to Jeszka on March 28, 2008. Given the circumstances, the Board's decision to deny the petition for rehearing was not "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with the law, or . . . contrary to constitutional right, power, privilege, or immunity." Coghlan, 470 F.3d at 1304 (citation and quotation marks omitted).

For the foregoing reasons, we AFFIRM the Board's decision and DENY Ledbetter and Jeszka's petition for review.

**AFFIRMED, PETITION DENIED.**

17