[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
SEPT 19, 2006
THOMAS K. KAHN
CLERK

_____

No. 06-11118
Non-Argument Calendar

_____

Agency No. SE-17000

HAROLD A. COGHLAN,

Petitioner,

versus

NATIONAL TRANSPORTATION SAFETY BOARD,
FEDERAL AVIATION ADMINISTRATION,

Respondents.

_____

Petition for Review of a Decision of the
Federal Aviation Administration

_____

**(September 19, 2006)**

Before TJOFLAT, BIRCH and WILSON, Circuit Judges.

PER CURIAM:

On October 28, 2003, the Federal Aviation Administration ("FAA") issued

an order finding that Harold A. Coghlan had violated certain FAA regulations and

revoking his Airline Transport Pilot ("ATP") certificate. An administrative law

judge ("ALJ") upheld the order on appeal, and his decision was thereafter affirmed

in an order issued by the National Transportation Safety Board ("NTSB").

Coghlan now petitions for review in this Court, arguing that the proceedings below

were time-barred under 28 U.S.C. § 2462. After careful review, we affirm the

order of the NTSB and deny Coghlan's petition.

## I. BACKGROUND

On May 27, 1998, while serving as an Aviation Safety Inspector in the

FAA's Flight Standards District Office in Birmingham, Alabama (the

"Birmingham FSDO"), Coghlan applied for and received type ratings in BE-200

(Beech King Air) and CE-500 (Cessna Citation) aircraft based on military

competency obtained in the U.S. Army.[1] On his application Coghlan certified,

*inter alia*, that he had flown RC-12D (the military equivalent of the BE-200), T-47

(the military equivalent of the CE-500), and C-12 aircraft for at least 10 hours as

pilot-in-command during the 12 months preceding his application. *See* 14 C.F.R. §

---

[1] At the time of Coghlan's application, FAA regulations permitted a rated or former rated military pilot to apply for a type rating if the pilot met certain requirements. *See* 14 C.F.R. § 61.73(a) (1998). These requirements varied depending on whether the pilot was on active flying status during the 12 calendar months before the month of application. *See id.* § 61.73(b), (c).

2

61.73(d)(2) (1998) (one element a pilot must show to obtain a type rating is "[a]t least 10 hours of pilot-in-command time in that aircraft . . . type . . . during the 12 calendar months before the month of application").

More than a year after Coghlan's successful 1998 application, a time and attendance audit conducted by the Birmingham FSDO raised questions about the authenticity of a June 1999 military order (purporting to call Coghlan to active duty) that Coghlan had submitted to the FAA. Further investigation led to a review of Coghlan's complete airman records, including his 1998 application for the BE-200 and CE-500 type ratings. In February of 2001, the FAA sent Coghlan a letter requesting that he produce the records he had relied upon to obtain those type ratings. Among the records Coghlan produced were the following: (1) a U.S. Army form, bearing stamps and a signature indicating that the form was prepared by Chilean military officials, purporting to document flights in the military aircraft listed on Coghlan's 1998 application; and (2) a U.S. Army form purporting to show that Coghlan earned 112 Army Reserve points towards retirement for flights with the Chilean Air Force in March and April of 1998.

The June 1999 military order purporting to call Coghlan to active duty was ultimately determined to be false, and he pled guilty to a criminal charge regarding his acceptance of pay from the FAA during the time when he was absent from his

FAA post while claiming to be on military duty. In accordance with his plea agreement, Coghlan also surrendered the 1998 type ratings he had received based on military competency in the RC-12D and T-47 aircraft, though without admitting that he had done anything wrong, improper, or illegal in obtaining those type ratings. Coghlan's surrender of the type ratings had no affect on his ATP certificate.

On October 24, 2001, the FAA notified Coghlan that it was proposing to revoke his ATP certificate. Approximately two years later, the FAA issued an order doing precisely that. The revocation order acknowledged the forms submitted by Coghlan in support of his 1998 type ratings application, but noted that: (1) while Coghlan's forms stated he had earned 112 Army Reserve points for flight time in March and April of 1998, military records indicated that his retirement from the U.S. Army Reserve was effective as of March 1, 1996; (2) Coghlan's last official flight recordation, verified by the Army Reserve Personnel Center, did not indicate military flight time for any aircraft after March 1, 1996; (3) the RC-12D identified in Coghlan's 1998 type ratings application was not located in the area where he claimed to have flown it at the time he purportedly earned flight hours. These discrepancies, the order stated, established that Coghlan had entered false information on his 1998 application for BE-200 and CE-500 type

4

ratings, and that he had produced falsified military records in an attempt to corroborate the application. Thus, the FAA concluded, Coghlan violated 14 C.F.R. § 61.59(a)(1) and (2), and lacked the qualifications necessary to be the holder of an ATP certificate.[2]

Coghlan appealed the order of recovation to an ALJ who, after receiving testimony and various exhibits into evidence over a two-day hearing, issued an oral decision affirming the revocation order for reasons substantially similar to those set forth by the FAA. Although Coghlan had moved to dismiss at the close of the evidentiary hearing, on the grounds that the action was barred under the 5-year statute of limitations set forth in 28 U.S.C. § 2462, the ALJ denied the motion.

Coghlan next appealed the ALJ's decision to the NTSB, arguing that: (1) the record did not support the ALJ's finding that Coghlan had made intentionally false statements on his application; (2) the FAA's revocation of Coghlan's ATP certificate based on an alleged lack of qualifications was arbitrary, capricious, and an abuse of discretion; and (3) the revocation proceeding was time-barred by 28 U.S.C. § 2462. The NTSB rejected all three arguments and affirmed the ALJ's decision, thereby upholding the revocation order. After reviewing the record, the

---

[2] Sections 61.59(a)(1) and (2) prohibit, *inter alia*, the making of fraudulent or intentionally false statements or entries to support an application for a certificate, rating, or authorization, or to show compliance with certificate requirements. 14 C.F.R. § 61.59(a)(1), (2).

NTSB found that "a preponderance of the reliable, probative, and substantial evidence establishes that [Coghlan] intentionally falsified his application and supporting documents, as alleged in the complaint."[3]  As for Coghlan's claim that the ALJ's decision was arbitrary and capricious, this argument was based on the fact that, after Coghlan had surrendered his BE-200 and CE-500 ratings under the plea agreement, the FAA found him qualified for one of those ratings on a basis other than military competency.  The NTSB characterized this argument as one for equitable estoppel, which it found inapplicable to a revocation proceeding.  Finally, the NTSB rejected Coghlan's invocation of 28 U.S.C. § 2462 on the following grounds: (1) Coghlan waived any statute of limitations defense when he did not include it in his answer to the FAA's complaint; (2) even if the defense was not waived, it does not apply to revocation proceedings because they do not involve the enforcement of a "civil fine, penalty, or forfeiture"; and (3) even if § 2462 did apply, the 5-year time period runs from the time Coghlan's offense was first discovered, not from May of 1998, and the action was therefore timely.

Coghlan now petitions for review in this Court, arguing only that the NTSB

_____

[3] The NTSB noted, for example, that: (1) numerous witnesses testified that Coghlan, who had retired from the U.S. Army Reserve in 1996 and not been recalled to duty, would not be eligible to receive type ratings based on military competency allegedly received after retirement; (2) the piloting time Coghlan claimed to have obtained in the U.S. Army was not in fact obtained under its auspices or any other branch of the U.S. military; (3) the documents Coghlan proffered in support of his flight time were not reflected in official U.S. Army records; and (4) the serial number Coghlan provided for the RC-12D he claimed to have flown was false.

erred when it declined to find the proceedings below time-barred under 28 U.S.C. § 2462. The FAA defends the decision of the NTSB.[4]

## II. STANDARD OF REVIEW

Where, as here, a person aggrieved by an order of the NTSB files a timely petition for review in this Court, we have "exclusive jurisdiction to affirm, amend, modify, or set aside any part of the order and may order the [NTSB] to conduct further proceedings." 49 U.S.C. § 1153(b)(1), (3); *see also* 49 U.S.C. §§ 44709(f), 46110. "We uphold a decision by the NTSB unless it is 'arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law,' or the challenged decision is 'contrary to constitutional right, power, privilege, or immunity.'" *Zukas v. Hinson*, 124 F.3d 1407, 1409 (11th Cir. 1997) (quoting 5 U.S.C. § 706(2)(A), (B)). "Findings of fact by the [NTSB], if supported by substantial evidence, are conclusive." 49 U.S.C. § 1153(b)(3). The NTSB's interpretation and application of statutory provisions such as 28 U.S.C. § 2462, however, is reviewed de novo. *See Zukas*, 124 F.3d at 1409. Furthermore, there is no showing that Congress delegated authority to the FAA or NTSB to implement § 2462, which is a general statute of limitations. Accordingly, those entities' construction and application of

---

[4] The FAA notes–and Coghlan does not dispute–that although Coghlan named the NTSB as a respondent in the instant appeal, *see* Fed. R. App. P. 15(a), the FAA is the real party in interest because it issued the revocation order at issue, while the NTSB merely adjudicated Coghlan's administrative appeal. *See* 49 U.S.C. § 44709(f); 49 C.F.R. § 821.64(a).

§ 2462 is not entitled to the deference described in *Chevron U.S.A., Inc. v. Natural Resources Defense Council, Inc.*, 467 U.S. 837, 104 S. Ct. 2778, 81 L. Ed. 2d 694 (1984). *See United States v. Mead Corp.*, 533 U.S. 218, 226-27, 121 S. Ct. 2164, 2170-2171, 150 L. Ed. 2d 292 (2001); *London v. Fieldale Farms Corp.*, 410 F.3d 1295, 1304 (11th Cir. 2005), *cert. denied*, __ U.S. __, 126 S. Ct. 752, 163 L. Ed. 2d 574 (2005). Even so, where a statute of limitations is invoked to bar government action, that statute is generally to be construed strictly in favor of the government. *See United States v. Telluride Co.*, 146 F.3d 1241, 1244-45 (10th Cir. 1998).

## III. DISCUSSION

Coghlan contends that the NTSB erred when it refused to hold the FAA's revocation proceedings barred under the 5-year statute of limitations set forth in 28 U.S.C. § 2462, which states:

> Except as otherwise provided by Act of Congress, an action, suit or proceeding for the enforcement of any civil fine, penalty, or forfeiture, pecuniary or otherwise, shall not be entertained unless commenced within five years from the date when the claim first accrued if, within the same period, the offender or the property is found within the United States in order that proper service may be made thereon.

According to Coghlan: (1) he did not waive any statute of limitations defense, because the ALJ exercised its discretion to rule on that defense when Coghlan moved to dismiss during the administrative hearing; (2) section 2462 is applicable

8

here because the FAA's revocation order was a "penalty" for purposes of § 2462; (3) section 2462's limitation period began to run from the date of Coghlan's alleged violation, not upon the FAA's discovery of the same; and (4) the FAA did not "commence" proceedings against Coghlan within § 2462's 5-year limit. We agree with the FAA that § 2462 did not apply to Coghlan's revocation proceedings, and that even if it did, it did not preclude revocation of his ATP certificate. Accordingly, we need not reach the issue of waiver.

A.      *Section 2462 Does Not Apply*

According to its own terms, § 2462 applies to "an action, suit or proceeding for the enforcement of any civil fine, penalty, or forfeiture, pecuniary or otherwise," except where Congress has otherwise provided. 28 U.S.C. § 2462. Section 2462 encompasses not only judicial proceedings, but also administrative proceedings that fall within the scope of its language. *See 3M Co. v. Browner*, 17 F.3d 1453, 1455-58 (D.C. Cir. 1994); *Williams v. U.S. Dep't of Transp.*, 781 F.2d 1573, 1578 n.8 (11th Cir. 1986). However, "a 'penalty,' as the term is used in § 2462, is a form of punishment imposed by the government for unlawful or proscribed conduct, which goes beyond *remedying* the damage caused to the harmed parties by the defendant's action." *Johnson v. SEC*, 87 F.3d 484, 488 (D.C. Cir. 1996) (emphasis added). As the FAA points out, "[r]evocation of a

9

certificate is used as a *remedial* measure when the certificate holder lacks the necessary qualifications to hold the certificate." FAA Order 2510.3A, Ch. 2 ¶ 206(c) (Dec. 14, 1988, as amended Apr. 20, 1994) (emphasis added); *see Specht v. Civil Aeronautics Bd.*, 254 F.2d 905, 917 (8th Cir. 1958) ("[T]he primary effect of [] revocation is remedial, in that a pilot not qualified to command an airline transport aircraft has been denied the authority to do so."); *Salkind*, 1 N.T.S.B. 714, 717 (1970) ("In any event, the sanction herein is revocation [of a pilot certificate], which in turn involves lack of qualifications and thus is clearly remedial in nature."). Given their remedial nature, the FAA argues, revocation proceedings have generally been considered non-penal and outside the scope of § 2462. *See, e.g.*, *Hite v. NTSB*, 991 F.2d 17, 20 (9th Cir. 1993) (rejecting pilot's argument that the FAA had revoked his pilot certificate for punitive purposes, because revocation of a certificate is a remedial measure used when the certificate holder lacks the necessary qualifications); *Brzoska*, NTSB Order No. EA-4288 (Nov. 12, 1994) ("The five-year statute of limitations in 28 U.S.C. § 2462 is inapplicable because this revocation action does not involve the enforcement of a 'civil fine, penalty, or forfeiture.' It has long been recognized that certificate revocation is a remedial sanction.") (quoting 28 U.S.C. § 2462); *McDaniel*, NTSB Order No. EA-4189 (May 27, 1994) ("[T]he only statute of limitations, legal or equitable, that is

10

applicable to these remedial [revocation] proceedings is our own stale complaint rule."), *aff'd*, 56 F.3d 1392 (11th Cir. 1995) (table case); *King*, 4 N.T.S.B. 1311, 1312 (1984) ("The Administrator's authority to revoke a certificate, and the Board's authority to review that revocation upon appeal by the airman . . . are not subject to any time limitation.").

Coghlan concedes that, with regard to determining when constitutional protections such as the right to trial by jury are triggered, the general purpose of the FAA's enforcement scheme is punitive, rather than remedial. Even so, he argues, revocation can still constitute a "penalty" for purposes of § 2462 if it is at least partially punitive. *See Johnson*, 87 F.3d at 491 n.11 ("It is clearly possible for a sanction to be 'remedial' in the sense that its purpose is to protect the public, yet not be 'remedial' because it imposes a punishment going beyond the harm inflicted by the defendant."). "In other words, a sanction is a penalty even if only one of its various objectives is to punish wrongful conduct; that is, if it serv[es] *in part* to punish." *Am. Bus Ass'n v. Slater*, 231 F.3d 1, 7 (D.C. Cir. 2000) (internal quotes and citation omitted). Here, Coghlan argues, the revocation of his ATP certificate was at least partially punitive, because he had already surrendered the BE-200 and CE-500 type ratings obtained through his false statements (in accord with his plea agreement), and had in fact re-obtained one of those ratings on grounds other than

11

military competency.

We disagree. "[T]he test for whether a sanction is sufficiently punitive to constitute a 'penalty' within the meaning of § 2462 is an objective one, not measured from the subjective perspective of the accused (which would render virtually every sanction a penalty)." *Johnson*, 87 F.3d at 488. In *Johnson*, the D.C. Circuit held that a censure and six-month suspension imposed by the SEC on a branch manager for PaineWebber, Inc., who had failed reasonably to supervise an employee that misappropriated funds, was a penalty for purposes of § 2462. *Id.* at 488-92. In doing so, the court noted that "[t]his sanction would less resemble punishment if the SEC had focused on Johnson's current competence or the degree of risk she posed to the public," and that "it is evident that the sanctions here were not based on any general finding of Johnson's unfitness as a supervisor, nor any showing of the risk she posed to the public," but rather her failure reasonably to supervise a subordinate. *Id.* at 489. Here, the ALJ specifically found that Coghlan made false statements on his 1998 application, that he later produced falsified military records in an effort to corroborate his earlier false statements, that his conduct violated FAA regulations prohibiting such conduct, and that "*safety in air commerce, or in air transportation and the public interest* does require affirmation of the [FAA's] Order of Revocation . . . ." ALJ Initial Oral Decision and Order at

12

538 (emphasis added); *see* 49 U.S.C. § 44709(b)(1)(A) (empowering FAA to revoke any part of a certificate if it "decides after conducting a reinspection, reexamination, or other investigation that safety in air commerce or air transportation and the public interest require that action").  In affirming the ALJ, the NTSB noted that the fact that Coghlan had re-obtained a BE-200 type rating[5] "is not necessarily inconsistent with the [FAA's] position in this proceeding that [Coghlan] *lacks qualifications to hold his underlying [ATP] certificate based on his intentional falsification*."  NTSB Opinion and Order at 10 (emphasis added) (citing *Brzoska*, NTSB Order No. EA 4288 (Nov. 12, 1994) (determining that FAA was not estopped from pursuing a revocation action just because it had issued the pilot additional type ratings, because the FAA's allegation that the pilot lacked "the care, judgment, and responsibility required of a certificate holder" was "unrelated to his technical qualifications")).  Intentional falsification, the NTSB explained, calls into question a pilot's non-technical qualifications to hold an ATP certificate and threatens public air safety:

> "Qualification to hold an airman certificate involves far more than just having the technical competence to operate an aircraft; it involves, in addition, possessing the care, judgment and responsibility to comply with rules and regulations designed to ensure safe operation and safety in air commerce.  Few violations more directly call into question a

---

[5] The briefs are inconsistent on whether the type rating Coghlan re-obtained was a BE-200 or CE-500 rating, but the distinction is not material for purposes of our analysis.

13

pilot's non-technical qualifications than do those involving falsifications, and few falsifications more clearly implicate and threaten air safety than do those involving an airman's entitlement to advanced certificates or additional ratings."

*Id.* at 11 (quoting *Monaco*, 6 N.T.S.B. 705, 707 (1988)).

From Coghlan's perspective, the revocation of his ATP certificate may well seem to be a punitive sanction. However, the findings and rationale of the ALJ and NTSB discussed above indicate that the FAA revoked Coghlan's ATP certificate not to punish him for his falsifications, but because his falsifications called into question his fitness to hold an ATP certificate and implicated matters of public air safety. Thus, we are not persuaded by Coghlan's assertion that, "under the circumstances of this case," his exhibition of technical qualifications sufficient to re-obtain a previously surrendered type rating demonstrates that the subsequent revocation of his ATP certificate was a "penalty" for purposes of § 2462. *Cf. Meadows v. SEC*, 119 F.3d 1219, 1228 n.20 (5th Cir. 1997) (determining that temporary bar from the securities industry was remedial rather than punitive where the ALJ made specific findings as to the respondent's lack of fitness and the danger posed to the investing public).[6] Accordingly, Coghlan has failed to demonstrate

---

[6] Coghlan emphasizes that the revocation of his ATP certificate came more than 5 years after he falsified his 1998 application. *Cf. Proffitt v. FDIC*, 200 F.3d 855, 861 (D.C. Cir. 2000) (holding that FDIC's failure to act for more than 6 years after Proffitt's misdeeds weighed in favor of finding the FDIC's expulsion sanction to be a penalty). In *Proffitt*, however, it was clear that the FDIC could have taken action earlier than it ultimately did. *See id.* Coghlan demonstrates no such delay in the FAA's investigation and institution of revocation proceedings

error in the NTSB's decision that § 2462 was inapplicable.

B.     *Even if Section 2462 Did Apply, It Did Not Preclude Revocation Here*

Assuming § 2462 did apply, Coghlan contends that the NTSB erred when it determined that, "[a]lthough the offense took place in May 1998, the claim may not have accrued until after the time and attendance audit that raised questions about respondent's truthfulness, leading to the February 2001 letter of re-examination."  NTSB Opinion and Order at 12.  Coghlan notes that the term 'accrued' in § 2462 has been taken to mean that the running of the limitations period in penalty actions is measured from the date of the violation.  *3M Co.*, 17 F.3d at 1462; *see Trawinski v. United Techs.*, 313 F.3d 1295, 1298 (11th Cir. 2002) (per curiam) ("The statute of limitations begins with the violation itself–it is upon violation, and not upon discovery of harm, that the claim is complete and the clock is ticking.").  Here, the FAA filed its order of revocation as a complaint on November 13, 2003–more than 5 years after Coghlan falsified his application in May of 1998.  *See Capozzi v. United States*, 980 F.2d 872, 874 (2d Cir. 1992) (explaining that the terms of § 2462 "implicate some adversarial adjudication, be it administrative or judicial"); *Granda*, NTSB Order No. EA-4675 (June 8, 1998) ("It is well-settled in our case law that the adversary adjudication does not begin until

once it became aware that his certifications were suspect.

15

the filing of the complaint."). However, the FAA's revocation order was based not only on the false information contained in Coghlan's 1998 application, but also his "produc[tion of] falsified military records in an attempt to corroborate said false information." Order of Revocation ¶ 8; *see also* ALJ Oral Initial Decision and Order at 536-37. The record indicates that Coghlan produced falsified military records during the reexamination of his type ratings in March of 2001–well within 5 years of the FAA's November 2003 complaint.[7] "[NTSB] precedent is clear that revocation may be supported by even one instance of intentional falsification." *Branum*, NTSB Order No. EA-4849 (July 31, 2000); *see also McCarthney*, 7 N.T.S.B. 670, 672 (1990) ("Board precedent firmly establishes that even one intentional falsification compels the conclusion that the falsifier lacks the necessary care, judgment and responsibility required to hold any airman certificate."). Thus, even if § 2462 were applicable to Coghlan's revocation proceedings, he engaged in sufficient prohibited conduct within the statute of limitations to sustain the NTSB's decision upholding the order of revocation.

## IV. CONCLUSION

---

[7] Although Coghlan asserts that the FAA's allegations were "ambiguous" as to when he produced the falsified military records, we believe the fairest reading of the revocation order–and the decisions of the ALJ and NTSB–indicates that Coghlan produced at least some falsified military records in response to the FAA's March 2001 reexamination of Coghlan's type ratings.

16

Coghlan has not shown that the NTSB committed reversible error when it determined that the statute of limitations in 28 U.S.C. § 2462 did not apply to his revocation proceedings.  Even if § 2462 were applicable, however, falsification of military records in which Coghlan was found to have engaged was adjudicated within the statute of limitations and was sufficient to sustain the NTSB's decision upholding the FAA's order of revocation.  Accordingly, we affirm the order of the NTSB and deny Coghlan's petition.

**AFFIRMED, PETITION DENIED.**