# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

No. 14-51091

UNITED STATES OF AMERICA,

> Plaintiff - Appellee

v.

HONGYAN LI,

> Defendant - Appellant

United States Court of Appeals
Fifth Circuit

**FILED**

July 27, 2015

Lyle W. Cayce
Clerk

Appeal from the United States District Court
for the Western District of Texas
USDC No. 1:13-CV-59

Before JOLLY, HIGGINBOTHAM and DAVIS, Circuit Judges.

PER CURIAM:*

Defendant Hongyan Li, a naturalized United States citizen, pled guilty to acts related to her illegal prostitution business and to laundering the proceeds of that illegal business. Thereafter, the government initiated proceedings to revoke Li's naturalization, alleging that her prostitution operation and money laundering activities—before her naturalization— precluded her possession of the "good moral character" required for one to

---

* Pursuant to 5th Cir. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5th Cir. R. 47.5.4.

No. 14-51091

become a naturalized U.S. citizen.  The government and Li cross-moved for summary judgment.  The district court granted summary judgment in favor of the government and revoked Li's U.S. citizenship.  We affirm.[1]

## I.

Li first argues that the government's civil action to revoke her naturalized U.S. citizenship violated the plea agreement underlying her convictions for enticing prostitution and money laundering.[2]  To interpret the terms of that plea agreement, we apply general contract law principles, considering "whether the government's conduct is consistent with the defendant's reasonable understanding of the agreement."  *United States v. Cantu*, 185 F.3d 298, 304 (5th Cir. 1999) (quoting *United States v. Valencia*, 985 F.2d 758, 761 (5th Cir. 1993)).

As is relevant here, the plea agreement provides:

> The United States agrees not to use any truthful statements, testimony, or information provided by [Li] under the terms of this agreement against [Li] at sentencing or as the basis for *any subsequent prosecution.  . . .* [Li] fully understands that, by this plea agreement, no promises, representations, or agreements have been made or entered into with any other United States Attorney or with any state prosecutor concerning other possible offenses or charges.  It is further understood by the parties that *this agreement does not prevent any government*

---

[1] Because the appeal is from a grant of summary judgment, we review the district court's conclusions de novo and construe all of the facts in the non-movant's favor.  *Day v. Wells Fargo Bank Nat'l Ass'n*, 768 F.3d 435, 435 (5th Cir. 2014); *Price v. Fed. Express Corp.*, 283 F.3d 715, 719 (5th Cir. 2002).  The district court granted summary judgment in the government's favor; therefore, we construe the facts in Li's favor.

[2] "We review a claim of breach of a plea agreement de novo . . . , accepting the district court's factual findings unless clearly erroneous."  *United States v. Davis*, 393 F.3d 540, 546 (5th Cir. 2004).

2

*agency from pursuing civil and/or administrative actions against [Li]* or any property.

Emphases added.  Li contends that this language prevents the government from pursuing its civil denaturalization action because, according to Li, the government's civil action is a "prosecution," which is not permitted under the plea agreement.

Li's position is not supported by the unambiguous language of the plea agreement.  First, in the context of the agreement, the term "prosecution" refers to criminal prosecutions, not civil actions.  Thus, the term cannot be read reasonably to apply to this *civil* proceeding to revoke Li's citizenship.  Although the term "prosecution" can capture a wide swath of legal proceedings other than criminal prosecutions, this Court has held that, in the context of a plea agreement, the term is read most naturally to refer to criminal prosecutions. *See, e.g.*, *Bickham Lincoln-Mercury Inc. v. United States*, 168 F.3d 790, 792-93 (5th Cir. 1999) (reviewing a plea agreement that stated that the defendant "would not be subject to further prosecution" and noting that "[p]rosecution typically involves proceeding against a person criminally"); *id.* at 793 (observing that the term "prosecution" is "part of the terminology of the criminal law, describing the means by which the law is to be enforced, and associated in popular thought with laws for the prevention and punishment of crime" and noting that "the word refers to a criminal action or proceeding, and . . . has been said to be synonymous with 'criminal action' ").

Moreover, to the extent that there may be ambiguity in the plea agreement's use of the term "prosecution," such ambiguity is resolved by the remainder of the agreement, which states explicitly that the government can pursue civil and administrative actions against Li:  "[The] agreement does not prevent any government agency from pursuing civil and/or administrative actions against [Li]."  The government's civil action in this case falls squarely

No. 14-51091

within the core of this language; and, therefore, the government has not breached the plea agreement by seeking to revoke Li's naturalization.[3]

## II.

Li's second argument is that the government's denaturalization action is time-barred under the general-purpose federal statute of limitations, which provides:

> Except as otherwise provided by Act of Congress, an action, suit or proceeding for the enforcement of any civil fine, penalty, or forfeiture, pecuniary or otherwise, shall not be entertained unless commenced within five years from the date when the claim first accrued . . . .

28 U.S.C. § 2462.[4]

"[T]he United States is not bound by any limitations period unless Congress explicitly directs otherwise." *United States v. City of Palm Beach Gardens*, 635 F.2d 337, 339 (5th Cir. 1981). Where a party seeks to apply a statute of limitations against the government, the statute at issue "must receive a strict construction in favor of the Government." *Badaracco v. C.I.R.*, 464 U.S. 386, 391 (1984) (quotation mark omitted).

Li points to § 2462 as an explicit direction from Congress that restricts the filing of the present action to a five-year period. But, strictly construed in the government's favor, the limitations period in § 2462 does not apply to civil denaturalization actions because such actions cannot be classified as punitive in nature. In fact, the Supreme Court interpreted the predecessor statute to

---

[3] Because the contested portions of the plea agreement are unambiguous, we need not reach Li's argument regarding parol evidence.

[4] The district court concluded that the statute of limitations did not apply to this action; this is a legal conclusion that is subject to de novo review. *Tharpe v. Thaler*, 628 F.3d 719, 722 (5th Cir. 2010).

4

§ 2462 and held that "[t]he words 'penalty' or 'forfeiture' in this section refer to something imposed in a *punitive* way for an infraction of a public law." *Meeker v. Lehigh Valley Ry. Co.*, 236 U.S. 412, 423 (1915) (emphasis added). Remedial actions do not count. *Id.*[5] The Supreme Court's conclusion that the language in the predecessor statute to § 2462 refers to punitive and not remedial actions guides our conclusion that § 2462's limitations period does not apply in the denaturalization context.[6]

Notwithstanding that the revocation of Li's naturalized citizenship is certainly severe, it cannot be called punitive. Indeed, if an individual is statutorily ineligible to be naturalized at the time she becomes a citizen, her certificate of naturalization must be cancelled and her citizenship must be revoked and set aside. *See* 8 U.S.C. § 1451(a) (noting that the revocation is effective retroactively and given the original date of the naturalization certificate); *see also Fedorenko v. United States*, 449 U.S. 490, 506 (1981) (describing the illegal procurement of naturalized citizenship). Simply put, denaturalization is the withdrawal of something to which the individual was

---

[5] Courts continue to apply the basic holding from *Meeker*, namely that a "penalty or forfeiture" under § 2462 means a *punitive* measure, not a remedial one. *See, e.g., Coughlan v. Nat'l Transp. Safety Bd.*, 470 F.3d 1300, 1305 (11th Cir. 2006); *United States v. Telluride Co.*, 146 F.3d 1241, 1245–46 (10th Cir. 1998) (holding that a sanction is a "penalty" under § 2462 if it "seeks compensation unrelated to, or in excess, of the damages caused by the defendant" and concluding that § 2462 did not apply to the government's claim for injunctive relief in an environmental-restoration suit because "the restorative injunction [sought] is not a penalty because it seeks to restore only the wetlands damaged by [the company's] acts to the status quo . . . and does not seek compensation unrelated to or in excess of the damages caused by [the company's] acts"); *Johnson v. S.E.C.*, 87 F.3d 484, 488 (D.C. Cir. 1996) ("In sum, we conclude that a 'penalty,' as the term is used in § 2462, is a form of punishment imposed by the government for unlawful or proscribed conduct, which goes beyond remedying the damage caused to the harmed parties by the defendant's action.").

[6] Other courts to consider the issue have also held that § 2462 and its predecessor statute do *not* apply to denaturalization actions. *See, e.g., United States v. Hauck*, 155 F.2d 141, 143 (2d Cir. 1946); *United States v. Rebelo*, 394 F. App'x 850, 852–53 (3d Cir. 2010); *see also, e.g., Restrepo v. Att'y Gen. of U.S.*, 617 F.3d 787, 802 (3d Cir. 2010) (concluding "that § 2462's five-year statute of limitations does not apply to removal proceedings").

never entitled; denaturalization is a restorative or remedial action, not an action that seeks to punish the commission of a crime. *Accord Coughlan v. Nat'l Transp. Safety Bd.*, 470 F.3d 1400, 1305-07 (11th Cir. 2006) (concluding that the limitations period in § 2462 was inapplicable to the revocation of a piloting certificate because the certificate was not revoked as punishment but was withdrawn because the pilot was unqualified to hold it). Li's sentence punished her for her crimes; denaturalization addresses her qualifications for becoming a naturalized citizen.

Indeed, the government instituted this specific denaturalization action because Li never actually met the requirements for naturalization. It was those acts supporting her criminal convictions that rendered her ineligible for naturalization and citizenship, and the denial of citizenship is an adverse consequence of that conduct. But, the government has not instituted these proceedings to "punish" Li for that conduct; instead, it is attempting to correct the mistake of granting her citizenship. Because the denaturalization action is not punitive, the limitations period in § 2462 is inapplicable to Li's case.

## III.

### A.

Finally, Li argues that the government has not satisfied its "heavy burden" of showing that she should be denaturalized. *See Fedorenko*, 449 U.S. at 505. An individual seeking naturalized U.S. citizenship must show that she "has been and still is a person of good moral character." 8 U.S.C. § 1427(a)(3).[7] The government can prevail in its denaturalization action only if "[t]he

---

[7] In Li's case, she had to demonstrate good moral character for a period of five years before she filed her naturalization application (in April 2006) until her naturalization ceremony (in August 2007). That is, Li was required to be a person of good moral character from April 17, 2001, through August 8, 2007, the date of her citizenship oath.

No. 14-51091

evidence justifying revocation of citizenship [is] clear, unequivocal, and convincing and [does] not leave the issue in doubt." *Fedorenko*, 449 U.S. at 505. (quotation marks omitted). The government has met its burden.

Li pled guilty to violating 18 U.S.C. §§ 2422 and 1957(a), statutes which prohibit enticing interstate travel for the purposes of prostitution and money laundering, respectively. As a factual basis for her plea, Li admitted that she had multiple residences housing multiple prostitutes over a multi-year period prior to her naturalization. She also admitted that she laundered the money from her illegal prostitution business. These acts made Li automatically ineligible for naturalization because these convictions demonstrated her lack of "good moral character." *See* 8 U.S.C. § 1101(f)(3) ("No person shall be regarded as . . . a person of good moral character" if she if convicted of violating or admits to violating § 1182(a)(2)(D)); *id.* § 1182(a)(2)(D)(ii) (stating that an alien is inadmissible if she "directly or indirectly procures or attempts to procure . . . prostitutes or persons for the purpose of prostitution, or receives . . . in whole or in part, the proceeds of prostitution"); *see also* 8 C.F.R. § 316.10(b)(2)(vii) ("An applicant shall be found to lack good moral character if during the statutory period the applicant . . . is or was involved in prostitution or commercialized vice as described in [8 U.S.C. § 1182(a)(2)(D)].").  It is thus clear that the government satisfied its heavy burden supporting denaturalization.

## B.

Li argues that the district court's conclusion is procedurally erroneous because the government's complaint only sought to denaturalize her under 8 C.F.R. § 316.10(b)(iii), rather than C.F.R. § 316.10(b)(2)(vii). Li's focus is too narrow, causing her to overlook that the government cited a relevant statutory provision, 8 U.S.C. § 1101(f), which provides that Li's prostitution-related business precludes a finding that she had good moral character. *See* 8 U.S.C.

7

No. 14-51091

§ 1101(f)(3); *see also id.* § 1101(f)(8) (referencing subsection (a)(43), which states that Li automatically lacked the requisite good moral character because of her convictions under 18 U.S.C. § 1957 and § 2422).

The complaint placed Li's prostitution-related conduct directly at issue, alleging that she illegally procured her citizenship because she "committed unlawful acts, including enticing interstate travel for prostitution and money laundering, that adversely reflected upon her moral character during the period in which she was required to show good moral character." Li's argument that the complaint was defective is meritless.[8]

## IV.

The district court did not err in granting summary judgment for the government. The cancellation of Li's certification of naturalization is, therefore,

AFFIRMED.

---

[8] Li's argument that the detailed and lengthy factual basis for her prostitution-related convictions is somehow insufficient to show that she "is or was involved in prostitution" is meritless. Furthermore, because the government satisfied its burden to show a clear and unequivocal lack of good moral character, we need not address its alternative bases for revoking Li's citizenship.