[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 16-13067
Non-Argument Calendar

_____

Agency No. EA-5775

PATRICK THEO FREIWALD,

Petitioner,

versus

FEDERAL AVIATION ADMINISTRATION,

Respondent.

_____

Petition for Review of a Decision of the
Department of Transportation, NTSB

_____

(April 24, 2017)

Before TJOFLAT, HULL and WILLIAM PRYOR, Circuit Judges.

PER CURIAM:

Patrick Freiwald, proceeding pro se, petitions for review of the National Transportation Safety Board's ("NTSB") final order. The NTSB affirmed the administrative law judge's ("ALJ") decision affirming the Federal Aviation Administration's ("FAA") revocation of Freiwald's mechanic certificate and inspection authorization. On appeal, petitioner Freiwald challenges the ALJ's credibility determinations, the finding that Freiwald violated FAA regulations, and several evidentiary rulings. After careful review, we affirm the NTSB's final order and dismiss in part and deny in part Freiwald's petition.

## I.  BACKGROUND FACTS

### A.    Freiwald's Work on the Aircraft

Petitioner Freiwald, an aircraft mechanic, held a mechanic certificate and an inspection authorization issued by the FAA. In 2015, Freiwald performed maintenance and an annual inspection on a Beechcraft B23 ("the aircraft") owned by Robert Greenberger. Freiwald completed an inspection checklist and made an entry in the aircraft's maintenance logbook, indicating all the work he had performed and that his work complied with the Beechcraft Service and FAA manuals.

Relevant to this appeal, Freiwald stated in the logbook entry that he had removed and reinstalled the fuel selector valve "with new seals, O-rings, lock rings" and that he did not observe any leaks; that he had adjusted the tension of the

2

flight control cable and lubricated it; and that he had adjusted and lubricated the "trim tab free-play." Freiwald also certified that the aircraft was airworthy, and he returned it to service.

When Greenberger arrived to pick up the aircraft, he was accompanied by Larry Gordon, his personal flight instructor, and Scott Charlton, an aircraft mechanic, flight instructor and commercial pilot, who were to fly the aircraft for Greenberger. Greenberger, Gordon, and Charlton observed problems with the aircraft, including stiff flight controls and a fuel leak. Concerned, Gordon and Charlton told Greenberger they would not fly the aircraft.

Greenberger had Charles Clary, an airframe mechanic with a shop at the airport, tow the aircraft to a nearby hangar. Later, Greenberger asked: (1) Clary to fix the fuel leak; and (2) Charlton to work on the aircraft's trim controls. Based on their work on the aircraft, both Charlton and Clary concluded that Petitioner Freiwald either had not performed the work he said he had, or had performed the work improperly.

## B.    FAA Inspection and Emergency Order

Greenberger lodged a complaint against Petitioner Freiwald with the FAA. FAA Inspector Alexander Honig conducted an onsite inspection, at which he watched Clary partially disassemble the fuel selector valve, and took pictures. Inspector Honig concluded that petitioner Freiwald had performed the maintenance

and annual inspection in a manner prohibited by FAA regulations and had not returned the aircraft to service in an airworthy condition. Consequently, the FAA issued an Emergency Order.

The FAA's Emergency Order alleged in sections I through VII that petitioner Freiwald improperly repaired the aircraft and made false entries in the maintenance logbook relating to: (1) the use of blind rivets on the aircraft's lower flight control surface skins ("section I"); (2) the reinstallation of the fuel selector valve with new parts and no leaks ("section II"); (3) installation of a battery ("section III"); (4) the adjustment and lubrication of the flight control cable ("section IV"); (5) the adjustment and lubrication of the trim tab ("section V"); (6) the certification that the aircraft was in an airworthy condition and was returned to service ("section VI"); and (7) the certification that the annual inspection had been performed ("section VII"). The FAA determined that Freiwald's acts of falsifying maintenance records demonstrated that he lacked the degree of care, judgment, and responsibility required of a certificate holder and constituted an emergency related to safety in air commerce. Thus, the FAA revoked Freiwald's airman mechanic's certificate and inspection authorization.

## C.    ALJ's First Hearing

Petitioner Freiwald appealed the Emergency Order. At an ALJ hearing, Greenberger, Charlton, Clary, Inspector Honig, and petitioner Freiwald all

4

testified.  In addition, the FAA submitted, <u>inter alia</u>, numerous photographs of the aircraft and various parts, the pertinent portions of the aircraft's maintenance logbook, excerpts from the relevant Beechcraft service manual and FAA advisory circular, and Freiwald's annual inspection checklist.  Petitioner Freiwald attempted to introduce a DVD containing videos he had taken of the aircraft during a post-maintenance "ground run," but the ALJ stated that there was no way to look at the DVD.

After the evidence was presented, the ALJ found that Petitioner Freiwald made intentionally false logbook entries about: (1) maintenance he performed on the aircraft's fuel selector valve; (2) adjustments he made to the aircraft's trim tab free-play; (3) adjustments he made to the flight control cables; (4) returning the aircraft to service meeting type design and in a condition for safe operation; and (5) his completing the annual inspection and certifying that the aircraft was airworthy, as alleged in sections II, IV, V, VI and VII of the Emergency Order. [1] Therefore, the ALJ affirmed the FAA's decision to revoke Petitioner Freiwald's mechanic certificate and inspection authorization.

**D.    NTSB Remand**

---

[1]The ALJ found that the evidence did not establish the violations alleged in sections I and III of the Emergency Order relating to Freiwald's replacing the aircraft's battery and using blind rivets on the flight control skins.

5

Petitioner Freiwald appealed. The NTSB remanded for the ALJ "to make credibility determinations" as to the five established violations "based explicitly on factual findings in the record and to reconvene the evidentiary hearing for the limited purpose of considering [Freiwald's] DVD evidence." The NTSB instructed the ALJ to "provide the parties an opportunity to examine the witnesses concerning the DVD evidence, present evidence to rebut the DVD, and supplement closing arguments."

### E.    ALJ's Second Hearing

At the reconvened ALJ hearing, petitioner Freiwald was permitted to play the DVD videos and testify about what they showed. When the ALJ pointed out to petitioner Freiwald that the videos did not show the undercarriage of the aircraft where the fuel leak was seen, Freiwald said he had "still photographs" and that his wife, who was present when the videos of the ground run were made, could testify that there was no leak. The ALJ did not allow petitioner Freiwald to introduce the still photographs or call his wife as witness, explaining that Freiwald could have introduced this evidence at the earlier hearing and that the NTSB's remand was for the limited purpose of considering the video evidence.

The ALJ addressed the video evidence and concluded that it did not support petitioner Freiwald's claims or rebut the FAA's evidence. The ALJ found that the first video merely showed Freiwald walking around the aircraft, the second video

6

showed Freiwald inside the cockpit moving the fuel selector valve's switch from left to right, but did not show the inside of the fuel selector valve or the underside of the aircraft where a fuel leak would be, and the third video showed the flight controls moving, but did not rebut that they were stiff.

Turning to the witnesses' credibility, the ALJ determined that Greenberger, Charlton, Clary, and Inspector Honig were all "quite credible," and that petitioner Freiwald had presented nothing to discredit their testimony. The ALJ found credible Charlton's testimony that he saw the fuel leak and that the flight controls were too stiff to fly because Charlton was merely a flight instructor who was there to fly the aircraft for Greenberger. The ALJ found that Inspector Honig's testimony was credible because he had extensive aircraft maintenance experience and was very knowledgeable. The ALJ noted that Clary was "a bit litigious on cross-examination," but he was also very knowledgeable, and his credibility was enhanced by the fact that he waited to disassemble the fuel selector valve until Inspector Honig was there to observe. The ALJ also credited Clary's testimony that the tension of the flight controls was more than double what it should have been, that the trim tab was unlubricated, and that the cotter pins were broken or missing. The ALJ stressed that Clary "was just asked to look at this and these are the things he found," and Clary did not have "a dog in this hunt."

7

The ALJ found that petitioner Freiwald's testimony, on the other hand, was "subject to some issues." The ALJ noted that Freiwald had a lot to lose, that he did not comply with the pretrial order regarding the disclosure of evidence to the FAA, and that, at the hearing, Freiwald admitted that he had relied on a NASA manual rather than on Beechcraft and FAA manuals, contrary to his logbook entry. The ALJ explained that the most critical factor that impugned Freiwald's credibility was that his logbook entry stated that he had replaced the O-rings, seals, and snap ring in the fuel selector valve, but the photographs and testimony from Inspector Honig and Clary clearly indicated that the work was never done. The ALJ determined that this discrepancy "destroy[ed] any credibility that [Freiwald] might have."

Based on these credibility findings, the ALJ found that petitioner Freiwald did not perform the work on the fuel selector valve, adjust the tension in the flight control cables, or lubricate the trim tab. The ALJ also found that the aircraft was not airworthy, and that Freiwald knew this when he returned the aircraft to service and made his entries in the logbook. The ALJ found that Freiwald's false statements in the logbook were intentional and material.

## F.    NTSB's Order Affirming the ALJ

On appeal, the NTSB found that the ALJ had made clear, explicit credibility determinations as to sections II, V, VI, and VII, but not as to section IV. The

8

NTSB rejected petitioner Freiwald's argument that there were any material inconsistencies among the FAA's witnesses. The NTSB determined that the ALJ properly excluded the still photographs and the testimony of Freiwald's wife as to her personal observations during the ground run as outside the scope of the remand. The NTSB reversed the ALJ's decision as to section IV (the flight control cables work), but affirmed the ALJ's decision as to sections II (the fuel selector valve work), V (the trim tab work), VI (the airworthiness certification and return to service) and VII (the annual inspection). Thus, the NTSB affirmed the FAA's Emergency Order revoking petitioner Freiwald's mechanic certificate and inspection authorization.

## II.  DISCUSSION

### A.    Standard of Review

We uphold a final order of the NTSB unless it was arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law. Coghlan v. N.T.S.B., 470 F.3d 1300, 1304 (11th Cir. 2006). Under the arbitrary and capricious standard, we do not substitute our judgment for that of the agency and will defer to wisdom of the agency provided the agency's decision was reasoned and rational. Zukas v. Hinson, 124 F.3d 1407, 1409 (11th Cir. 1997). We review purely legal issues de novo. Id. The NTSB's factual findings are binding if supported by substantial evidence. Coghlan, 470 F.3d at 1304; see also 49 U.S.C. § 1153(b)(3).

9

Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Swaters v. Osmus, 568 F.3d 1315, 1322 (11th Cir. 2009) (quotation marks omitted). We do not displace the agency's "choice between two fairly conflicting views" of the evidence, even if we justifiably could have made a different choice if the matter had been before us de novo. City of Pompano Beach v. F.A.A., 774 F.2d 1529, 1540 (11th Cir. 1985) (quotation marks omitted). "[I]t is not our function to reevaluate the weight of the evidence or to reexamine credibility choices made by the fact finder." Id.

## B.    Freiwald's Unexhausted Claim

As an initial matter, petitioner Freiwald argues for the first time that Inspector Honig failed to follow FAA rules during his investigation and falsified his investigative report. This Court cannot consider these arguments, however, because Freiwald did not raise them before the NTSB, and he has provided no reason why he could not have done so. See 49 U.S.C. § 1153(b)(4) ("In reviewing an order under this subsection, the court may consider an objection to an order of the Board only if the objection was made in the proceeding conducted by the Board or if there was a reasonable ground for not making the objection in the proceeding."). Accordingly, we dismiss Freiwald's petition to the extent he seeks to challenge the manner in which Inspector Honig conducted his investigation and prepared his report.

10

**C.    ALJ's Credibility Findings**

After the NTSB remand, the ALJ properly explained why he found credible the testimony of Greenberger, Charlton, Clary, and Inspector Honig and why he found petitioner Freiwald's testimony not credible.  Further, the ALJ's credibility findings, affirmed by the NTSB, were supported by substantial evidence.

As to the fuel selector valve, Greenberger, Charlton and Clary all testified consistent with one another that they saw fuel leaking from the aircraft. Furthermore, Clary waited to partially disassemble the fuel selector valve in Inspector Honig's presence.  Clary testified that when he opened up the fuel selector valve, the snap ring and the O-ring he removed were old, not new, corroded, damaged by tool marks, and covered in old sealant, and that the fuel selector valve was in poor condition.  Clary said that at some point the snap ring had been covered with sealant to stop a leak and then painted over.  Clary's testimony on these points was supported by photographs taken during the disassembly.

Petitioner Freiwald testified that he repaired the fuel selector valve and replaced the seals and that afterward there was no fuel leak.  The only evidence Freiwald presented to support his testimony, however, were the videos of the aircraft taken after he had finished the work and performed the annual inspection. These videos did not corroborate his testimony because they did not show the

11

inside of the fuel selector valve or the new O-rings, seals, and snap ring Freiwald said he had installed. The videos also did not show the underside of the aircraft, where Greenberger, Charlton and Clary all said the fuel leak occurred. Thus, as the ALJ explained, the videos neither supported petitioner Freiwald's testimony nor undermined the testimony of the FAA's witnesses. Moreover, the ALJ properly explained why he found petitioner Freiwald's testimony about the fuel selector valve not credible. The ALJ pointed to the photographs of the fuel selector valve and the testimony from Inspector Honig and Clary, which the ALJ said clearly established that the work had not been done, which destroyed Freiwald's credibility.

Petitioner Freiwald points out that Clary only partially disassembled the fuel selector valve. Clary admitted as much and explained that he did not need to further disassemble the fuel selector valve to see that the O-ring and snap ring were not new and that Freiwald had not done the work on the fuel selector valve that he claimed in the aircraft's logbook.

Petitioner Freiwald also stresses that Clary and Inspector Honig contradicted each other as to who took one of the photographs of the fuel selector valve, but that inconsistency is immaterial. Inspector Honig testified that Clary provided him with one picture of the unopened fuel selector valve before he arrived for the inspection, whereas Clary testified that Inspector Honig took all the pictures of the

12

fuel valve selector during the inspection.  Both Clary and Inspector Honig, however, identified the photographs of the fuel selector valve and its parts, agreed that they fairly and accurately represented what they saw during the inspection, and testified that the fuel selector valve was not repaired as petitioner Freiwald claimed.  Even with this minor inconsistency over who took one of the photographs, the ALJ's credibility findings about the fuel selector valve are supported by substantial evidence.

As to the trim tab, Clary testified that when he inspected the trim tab he found that it was unlubricated and that cotter pins on the castle nuts were either missing or broken.  Although petitioner Freiwald maintained that he lubricated the trim tab, he admitted that he had "no way to prove that."  The ALJ credited Clary's testimony over Freiwald's testimony because Clary had no personal interest in the outcome.  Indeed, Clary encountered Greenberger only because the aircraft was marooned at the airport where Clary had his shop, and Clary agreed to tow the aircraft to a hangar for Greenberger.  The record contains no reason why Clary would have lied about what he found.

Petitioner Freiwald points to Charlton's testimony that he determined that the stabilator trim control, which puts the aircraft in a nose-up, neutral, or nose-down position, was "out of ring," i.e., not properly adjusted, and corrected it. Petitioner Freiwald contends that Charlton testified that the aircraft had been flown

before and after the repairs were made, which contradicted other evidence that the aircraft was not safe to fly. However, Charlton did not testify that the aircraft had been flown; he merely described the adjustment he made to the trim control so that it then could be flown safely.

In short, all of the ALJ's credibility determinations, affirmed by the NTSB, are supported by substantial evidence and thus are binding on this Court. See Coghlan, 470 F.3d at 1304; 49 U.S.C. § 1153(b)(3).

## B.    Violation of FAA Regulations

Liberally construed, petitioner Freiwald's appeal brief also challenges the finding that he violated FAA regulations as alleged in sections II, V, VI, and VI of the Emergency Order. In revoking Freiwald's mechanic's certificate and inspection authorization, the ALJ found that Freiwald violated 14 C.F.R. §§ 43.12(a)(1), 43.13(a) & (b), and 43.15(a). Thus, we first review the pertinent FAA regulations.

FAA regulations require any maintenance on, or inspection of, an aircraft to be entered in the aircraft's maintenance record. 14 C.F.R. §§ 43.9(a), 43.11(a). For maintenance, the certificate holder who approves the work must sign the entry, which "constitutes the approval of return to service only for the work performed." Id. § 43.9(a)(4). For inspections, the certificate holder must sign the entry and

14

certify that the aircraft is airworthy and approve the aircraft for return to service. Id. § 43.11(a)(3) & (4).

Under the regulations, any person performing maintenance on an aircraft must use methods prescribed by the manufacturer's maintenance manual or acceptable to the FAA and must work in such a manner and use materials of such a quality that the condition of the aircraft will be at least equal to its original or properly altered condition. Id. § 43.13(a) & (b). Further, any person performing an annual inspection of an aircraft must perform the inspection so as to determine whether the aircraft meets all applicable airworthy requirements in accordance with the instructions and procedures set forth for the aircraft being inspected. Id. § 43.15(a). To that end, the person must use a checklist when performing an annual inspection and must include each of the items contained in an appendix to the regulations. Id. § 43.15(c)(1) & App. D. Finally, a person is prohibited from making any fraudulent or intentionally false entry in any aircraft maintenance record that is required to be made, kept, or used to show compliance with the regulations. Id. § 43.12(a)(1).

To show that a respondent has made an intentionally false statement, the NTSB requires the FAA to prove: (1) a false representation; (2) in reference to a material fact; (3) made with knowledge of its falsity. Adm'r v. Dillmon, NTSB Order No. EA-5528, 2010 WL 2715714, at *3 (June 30, 2010) (citing Hart v.

15

McLucas, 535 F.2d 516 (9th Cir. 1976); Jeszka v. NTSB, 392 F. App'x 779, 784 (11th Cir. 2010) (unpublished) (citing to the test in Hart). The respondent's credibility is a proper consideration under the third prong. See Dillmon, 2010 WL 2715714, at *5. Under NTSB precedent, even one intentional falsification compels the conclusion that the falsifier lacks the necessary care, judgment and responsibility to hold any airman certificate. Coghlan, 470 F.3d at1308.

Here, the ALJ, affirmed by the NTSB, found that petitioner Freiwald made these four intentionally false entries in the aircraft's maintenance logbook, as alleged in sections II, V, VI and VII: (1) that he had reinstalled the fuel selector valve with new seals, O-rings and lock ring and that there were no leaks; (2) that, as part of the annual inspection, he had adjusted and lubricated the trim-tab free-play; (3) that, after he performed this maintenance, the aircraft met its type design and he returned the aircraft to service in airworthy condition; and (4) that he completed an annual inspection and that the aircraft was airworthy.

Substantial evidence supports the ALJ's factual findings, and the NTSB's affirmance of the revocation of petitioner Freiwald's mechanic's certificate and inspection authorization was not arbitrary and capricious. Credible witness testimony and photographs established that Freiwald had not ensured that the aircraft was in a condition equal to its original or properly altered condition because Freiwald did not repair the fuel selector valve (leading to the aircraft

16

leaking fuel), and he did not lubricate the trim tab.  Credible witness testimony and documentary evidence also established that the aircraft did not conform to its type design certification and was not airworthy.  Freiwald should have noted these issues during his annual inspection, but he did not.  See 14 C.F.R. § 43.15(c)(1) & App. D.  Accordingly, the NTSB properly affirmed the ALJ's determination that petitioner Freiwald violated 14 C.F.R. §§ 43.13(a) and (b) and 43.15(a), as alleged in sections II, V, VI, and VII of the Emergency Order.

Substantial evidence also supports the finding that petitioner Freiwald intentionally falsified maintenance records.  Under the three-part Hart test employed by the NTSB, unrebutted, credible testimony, documentary exhibits, and photographs established first that Freiwald made false representations in the logbook when he stated that he had replaced the seals, O-rings and lock ring in the fuel selector valve, lubricated and adjusted the trim tab free play, completed the annual inspection, and returned the aircraft to service in airworthy condition.  See Dillmon, 2010 WL 2715714, at *3.  Second, these false representations were material because they could influence the aircraft's owner and the FAA's determination as to whether the aircraft was airworthy.  See id.

Finally, the NTSB could properly consider credibility determinations in deciding whether Freiwald made these representations with knowledge of their falsity, and the ALJ properly determined based on the photographs and witness

17

testimony that Freiwald had no credibility and had not performed the work on the aircraft or found it airworthy as he indicated in the logbook.  See id. at *3, 5.  Accordingly, the NTSB properly affirmed the ALJ's determination that Freiwald violated 14 C.F.R. § 43.12(a)(1) and 43.15(a), as alleged in sections II, V, VI, and VII of the Emergency Order.  Because even one intentional falsification compels the conclusion that the falsifier lacks the necessary care, judgment, and responsibility to hold any airman certificate, the NTSB properly affirmed the revocation of Freiwald's mechanic's certificate and inspection authorization.  See Coghlan, 470 F.3d at 1308.

## C.    ALJ's Evidentiary Rulings on Remand from the NTSB

Petitioner Freiwald argues that the ALJ failed to follow the NTSB's remand order and abused his discretion when he did not require the FAA's witnesses to attend the reconvened hearing and when he excluded Freiwald's still photographs taken from his videos and his wife's testimony that there was no fuel leak.[2]

In NTSB proceedings, evidence is admissible only if it "is relevant, material, reliable and probative, and not unduly repetitious or cumulative."  49 C.F.R. § 821.38.  The Federal Rules of Evidence apply in NTSB proceedings "to the

---

[2]Freiwald also argues that the ALJ abused its discretion by refusing to consider the NASA manual Freiwald relied on in using blind rivets on the aircraft's skins.  We need not consider this issue, however, because Freiwald prevailed on the blind rivet violation, alleged in section I of the Emergency Order, when the ALJ determined that, although Freiwald's use of blind rivets was unauthorized, it was "just an error on [Freiwald's] part," and the FAA had not established that Freiwald intentionally falsified the logbook as to the blind rivets.

18

extent practicable." Id.  Under Federal Rule of Evidence 403, a court may exclude

relevant evidence if its probative value is substantially outweighed by a danger of

needlessly presenting cumulative evidence.  Fed. R. Evid. 403.  The NTSB reviews

the ALJ's evidentiary rulings for an abuse of discretion.  Adm'r v. Leaschauer,

NTSB Order No. EA-5712, 2014 WL 1401103, *8 (April 2, 2014).

The NTSB's determination that the ALJ did not abuse his discretion in his

evidentiary determinations was not arbitrary and capricious.  As to Freiwald's

claim that the ALJ failed to follow the NTSB's remand order when he did not

require the FAA's witnesses to attend the reconvened hearing, the transcript shows

that Freiwald wanted to impeach these witnesses based on their testimony at the

first hearing.  As the ALJ determined, what Freiwald proposed was beyond the

scope of the remand, which was limited to issues concerning Freiwald's videos of

the aircraft.

As to the excluded testimony of Freiwald's wife, as the NTSB explained,

Freiwald did not want to call his wife to testify about what the videos on the DVD

showed.  Instead, Freiwald wanted to call his wife to testify about what she

personally observed during the ground run—that she did not see a fuel leak under

the aircraft—because his videos failed to show the underside of the aircraft and

thus did not address whether there was a fuel leak.  The NTSB's remand, however,

was for the limited purpose of viewing the videos on the DVD and examining

19

witnesses about the contents of those videos.  Although, at the first hearing, Freiwald could have called his wife to testify about what she saw, at the second hearing such testimony was outside the scope of the NTSB's remand.

Finally, as to the still photographs taken from the DVD videos, that evidence was not only outside the scope of the NTSB's remand but also unduly repetitious and needlessly cumulative because the DVD videos were themselves already in evidence.  Unduly repetitious and cumulative evidence is properly excluded under 49 C.F.R. § 821.38 and Federal Rule of Evidence 403.

### III.  CONCLUSION

Because we cannot say the NTSB's final order affirming the ALJ was arbitrary and capricious, we affirm the decision to revoke petitioner Freiwald's mechanic certificate and inspection authorization.

**AFFIRMED, PETITION DISMISSED IN PART, DENIED IN PART.**

20